**In re Wade Dillon BALDWIN and Judith Ann Baldwin, Bankrupts.**

**Lizzie ZARATE, Plaintiff-Appellee,**

v.

**Wade Dillon BALDWIN, Defendant-Appellant.**

**No. 77–1696.**

United States Court of Appeals, Tenth Circuit.

Submitted March 13, 1978.

Decided June 30, 1978.

R. Thomas Dawe, Albuquerque, N.M., for defendant-appellant.

Jennie Deden Behles, Albuquerque, N.M., for plaintiff-appellee.

Before HILL, BARRETT and DOYLE, Circuit Judges.

HILL, Circuit Judge.

This action was brought by Lizzie Zarate, a creditor of bankrupt Wade Dillon Baldwin, for a determination of the dischargeability of her claim against Baldwin. The bankruptcy judge held that Zarate's claim was excepted from discharge by § 17(a)(2) of the Bankruptcy Act [11 U.S.C. § 35(a)(2)]. The district court affirmed. Baldwin seeks reversal of that determination.

In June, 1972, judgment was entered in New Mexico district court in an action by Zarate against Baldwin for negligent medical treatment. *Zarate v. Baldwin*, No. 11–71–01121 (Bernalillo Co., N.M., Dist. Ct., June 2, 1972). The judgment specifically incorporated the terms of an agreement settling Zarate's claim. The judgment recited that it was entered upon a claim of "simple negligence." It provided that Zarate should recover $60,000 from Baldwin, payable according to a stated schedule, with interest only in case of delinquency. The schedule of payments required Baldwin to pay $175 each month from July, 1972, through December, 1973; $500 each month from January, 1974, through May, 1975; and $800 each month thereafter until the full amount was paid. The judgment further provided that: "[T]he debt herein stated shall not be provable or dischargeable in bankruptcy." Baldwin made payments according to the schedule through April, 1975, at which time $48,850 remained unpaid.

Baldwin filed a petition for discharge in bankruptcy in June, 1975. Zarate commenced this action pursuant to § 17(c) of the Bankruptcy Act [11 U.S.C. § 35(c)]. She contended the debt should be excepted from discharge on two grounds: (1) Baldwin's contractual waiver, incorporated into the state court judgment, precluded discharge; (2) Because the settlement agreement upon which judgment was entered was reached through Baldwin's false representation that he would not seek discharge of the debt, her claim was excepted from discharge by § 17(a)(2).

The testimony adduced at the hearing in bankruptcy court revealed that Baldwin had previously obtained a discharge in bankruptcy and he was not again eligible to seek discharge until May, 1975. Both Zarate and Richard Ransom, her attorney in the state court proceeding, testified that at the time of the settlement negotiations she was concerned about the possibility Baldwin would seek discharge and that she agreed to the settlement only upon Baldwin's assurance that he intended to pay in full and that the debt would not be affected by subsequent bankruptcies.

The bankruptcy judge found that Baldwin misrepresented his intent to pay the debt in full and not to seek its discharge in bankruptcy and that Zarate relied upon that misrepresentation in entering into the settlement agreement. He further concluded that Baldwin was bound by his waiver contained in the settlement agreement. He held the debt was not dischargeable.

Baldwin contends the bankruptcy judge's conclusions regarding his misrepresentation and Zarate's reliance were erroneous. He further contends that the liability was not within the scope of § 17(a)(2) because Zarate did not give up property on account of his misrepresentation. Finally, he argues that the contractual waiver of his right to seek discharge of the debt is unenforceable.

The bankruptcy judge's findings of fact, adopted by the district court, will not be disturbed unless they are clearly erroneous. Fed.R.Civ.P. 52(a); Bankruptcy R. 810. The evidence amply supports the finding that Baldwin misrepresented his intent. The clause waiving discharge, together with the promise to pay inherent in the agreement, is at the very least a representation that Baldwin intended to pay the debt in full, regardless of future bankruptcies. The circumstances which indicate Baldwin had no intention of fulfilling that promise when he made it include his insistence that the agreement state Zarate's claim to be for "simple negligence", thus paving the way for discharge of the debt; [1] the progressive payment schedule that permitted Baldwin to avoid enforceable liability for the greater share of the debt or any interest thereon until he was again eligible to seek discharge; and the fact that he ceased to make payments as soon as he was again eligible to petition for discharge.

Testimony by Zarate and Ransom that she knew of his previous bankruptcy and

---

1. Claims for willful and malicious injuries are excepted from discharge by 11 U.S.C. § 35(a)(8).

insisted on the waiver clause to assure payment in full amply supports the finding that Zarate relied upon Baldwin's misrepresentation.

██ Section 17(a)(2) excepts from discharge claims which "are liabilities for obtaining money or property by false pretenses or false representations." A liability for negligent medical malpractice is a dischargeable debt. *In re Byrne*, 296 F. 98 (2d Cir. 1924). In its present posture, however, Zarate's claim is not for Baldwin's malpractice; it is for the property she forwent by entering into the settlement agreement in reliance on Baldwin's false representations. Before agreeing to the settlement, Zarate had an unliquidated claim for damages against Baldwin. The significant aspect of the agreement is not that it caused the prior claim to be reduced to judgment, but that it caused Zarate to give up property of a value equal to the present unpaid balance of the judgment.[2] By agreeing to settle, Zarate forwent her right to pursue her claim to judgment after trial. Her evidence could have shown that Baldwin's conduct was willful, in which case his liability would not have been dischargeable. 11 U.S.C. § 35(a)(8). But most importantly, she forwent her right to collect the debt through the process of the court during the time when Baldwin was precluded from seeking discharge by reason of his prior bankruptcy. By keeping current with the relatively low initial payments, Baldwin avoided interest on the unpaid balance of the principal sum, and he avoided enforceable obligation for the remainder of the debt until his statutory six years [11 U.S.C.

§ 32(c)(5)] had run. The bankruptcy judge correctly held that Zarate's claim was excepted from discharge by § 17(a)(2) of the Bankruptcy Act.

We need not address the matter of enforceability of the contractual waiver of discharge. The significance of the provision is that it constitutes a representation that Baldwin intended to pay the debt in full, which we have held was false.

AFFIRMED.

---

**2.** Because Zarate's claim was for property which she gave up by entering into the settlement agreement rather than for damages resulting from Baldwin's negligent malpractice, our decision in *In re Vickers*, No. 76–2175 (10th Cir. Aug. 19, 1977), stating the rule that when a claim has been reduced to judgment the record and the judgment are ordinarily dispositive as to the nature of the claim, does not apply.

The instant case may be distinguished from our recent opinion in *In re Felsen*, No. 77–2035 (10th Cir. Apr. 14, 1978). In that case, a guarantor of a debt challenged the discharge of his claim against the debtor for the amount he had been caused to pay on account of the debtor's

default. The original debt, the guarantor's liability thereon, and the debtor's liability to the guarantor had been reduced to judgment in state court pursuant to a settlement agreement. In the bankruptcy court the guarantor sought to raise the matter of the debtor's fraud in the contract of guaranty. We held that he was properly precluded from doing so because there had been no showing of fraud in the state court proceeding. We specifically noted "[t]here is nothing in this record which indicates that the stipulation reached in settling the litigation in the state court proceedings . . . was in any manner induced by fraud." Slip op. at 5–6.