**In re Bruce Gibson KRIGER, Bankrupt.**

**Thomas L. JOHNSON, Plaintiff,**

v.

**Bruce Gibson KRIGER, Defendant.**

**Bankruptcy No. 78–00776.**

United States Bankruptcy Court,
D. Oregon.

Nov. 26, 1979.

Drew L. Johnson, Eugene, Or., for plaintiff.

Barbara J. C. Shepard, Eugene, Or., for defendant.

## OPINION

C. E. LUCKEY, Bankruptcy Judge.

This is a bankruptcy proceeding arising out of a petition filed on behalf of Thomas L. Johnson seeking the determination of the dischargeability of a $5,000 claim against the estate of Bruce Kriger. The claim is founded on a stipulated judgment between the parties entered March 24, 1978 in Lane County Circuit Court, as a settlement of a lawsuit in which Mr. Johnson sought recovery for injuries sustained in an auto accident with Mr. Kriger which occurred on April 18, 1977.

Plaintiff seeks exception to discharge for this claim based on two contentions: 1, the conduct of Bruce Kriger, Debtor-Defendant, with regard to the auto accident from which Thomas Johnson's injuries arose, was willful and malicious within the meaning of

§ 17a(8), 11 U.S.C. § 35a(8); and 2, Defendant induced settlement of the personal injury suit by Thomas Johnson, for a substantially lesser amount than might have been recovered, through false representations upon which Plaintiff reasonably relied, made by Defendant with fraudulent intent, the representation being that Defendant would not file for bankruptcy if a reasonable settlement could be reached, § 17a(2), 11 U.S.C. § 35a(2).

The 1970 amendments to the Bankruptcy Act imposed upon the Bankruptcy Courts the exclusive jurisdiction to determine dischargeability of a debt in bankruptcy. Exceptions to dischargeability are to be strictly construed. *In re Houtman*, 568 F.2d 651, 656 (9th Cir., 1978). Burden of proof is on the Plaintiff to show that the debt should be excepted from discharge. *Murphy v. Wheatly*, 360 F.2d 180 (5th Cir., 1966).

The first class of liabilities excepted from discharge under § 17a(2) are those based upon the obtaining of money or property by false pretenses or representations. The determination of whether a given obligation is excepted from the effect of a discharge under this category of liabilities depends upon whether or not money or property has been obtained, the character of the property, the character of the false pretense or representation, the effect of obtaining a judgment, and whether or not there has been a waiver by the claimant. *1A Collier on Bankruptcy*, ¶ 17.16[1].

In order that a claim may come within the present exception, money or property must actually have been obtained as a result of the false representations. The general purpose was stated in the case of *Rudstrom v. Sheridan*, 122 Minn. 262, 142 N.W. 313 (1913):

"We assume . . . that Congress intended the language of the statute to be understood in its ordinary signification, and that the purpose of the law was to prevent the bankrupt from retaining the benefits of property acquired by fraudulent means. In order, therefore, to bring the statute into operation, and prevent the full discharge of the bankrupt, it should be made to appear that property of some kind, tangible or intangible, was thus obtained by him. The mere fact that the liability arose in consequence of his fraud is not alone sufficient; the fraud must be followed and result in a loss of property to the creditor."

As to what constitutes "property", the Supreme Court has stated in *Gleason v. Thaw*, 236 U.S. 558, 561, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915) that:

"at most it ('property') denotes something subject to ownership, transfer, or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business and the same significance attaches to it in many carefully prepared writings."

In the instant case, the question arises as to what, if any, property was obtained by Defendant as a result of his alleged false pretenses and representations. Plaintiff contends that as a result of Defendant's representation that he would not petition for bankruptcy if a settlement acceptable to him could be reached, that Plaintiff was induced to stipulate to a judgment of a far less value than one which could have been obtained if Plaintiff had pursued his claim to judgment after trial.

Plaintiff filed a complaint during 1977 in Lane County Circuit Court, Case No. 77–4661, alleging personal injury and property damage as a result of Defendant's negligence. The case was pending until resolution by Stipulated Judgment March 24, 1978. Defendant petitioned for bankruptcy on April 19, 1978. Section 63a(7) provides that the "right to recover damages" in a negligence suit is a provable claim if an action had been instituted prior to the filing of the petition in bankruptcy and was still pending when the petition was filed. The claim becomes allowable upon subsequent liquidation, subject to the supervision and control of the Bankruptcy Court.

Thus Plaintiff's pending claim was a dischargeable debt prior to its reduction to Judgment. Plaintiff offered opinion evidence at trial in this proceeding to the effect that it was highly likely a much larger judgment would have been attainable had Plaintiff pursued the claim to judgment after trial. However, in light of the paucity of unsecured assets in the debtor's estate and the virtual nonexistence of funds for distribution to general creditors, it is doubtful Plaintiff lost anything by reducing the claim to judgment.

In Plaintiff's trial memorandum he cites *Zarate v. Baldwin*, 578 F.2d 293 (10th Cir., 1978) in support of his contention that he gave up a valuable property right as a result of being induced to stipulate to judgment. *Zarate* is distinguishable from the instant case. In *Zarate*, Defendant Baldwin had previously obtained a discharge in bankruptcy and was not again eligible to seek discharge until three years after the settlement with Zarate. The settlement of the medical malpractice claim against Baldwin, a medical practitioner, provided a payment schedule whereby Baldwin was required to pay less than one-fifth of the settlement amount during the three years in which he was ineligible for discharge and rapidly accelerated payments thereafter. Baldwin promptly petitioned for bankruptcy upon regained eligibility with four-fifths of the settlement amount still unpaid. The Court there recognized the fact that, absent the agreement, Zarate could have collected the debt through the process of the Court during the time when Baldwin was precluded from seeking discharge by reason of his prior bankruptcy. Inexplicably, the Court in *Zarate* failed to make a specific finding that Baldwin had funds during the period of ineligibility from which Zarate could have collected but it seems to be the implicit inarticulated premise. The case at bar has no similar circumstances surrounding the settlement agreement to evidence that Plaintiff sustained loss of property.

■ Plaintiff's attorney also argued that, by foregoing his right to proceed to trial on the matter, Plaintiff gave up the opportunity to establish malicious and willful conduct on the part of Defendant thereby rendering the claim non-dischargeable. This argument is without merit. For, as will be discussed infra, Plaintiff is afforded the opportunity of establishing the underlying nature of the claim in the Bankruptcy Court pursuant to a petition for determination of dischargeability and the State Court Judgment is not determinative. Plaintiff has lost nothing. The *Stoner v. Walsh*, 24 Cal.App.3d 938, 101 Cal.Rptr. 485 (1972) case relied upon by Plaintiff is distinguishable because of the underlying fraud by which the Plaintiff was induced to forbear imposition of a lien on debtor's property.

The next question involves whether the type of fraud on which it is alleged the judgment debt rests amounts to "false pretenses or false representations" as required under § 17a(2). The Court has adopted a five-part test for determining when a debt is non-dischargeable under this provision. The test as set out in *In re Houtman*, 568 F.2d 651, 655 (9th Cir., 1978) is:

"(1) the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations;

(5) that the creditor sustained the alleged loss and damage as the proximate result of representations having been made."

Plaintiff contends that Defendant Kriger never intended to pay the Judgment entered against him. In support of this contention Plaintiff offered evidence at trial setting forth the sequence of events from which it could be inferred that Defendant made false representations, which he knew were false at the time, with the intention and purpose of deceiving the Plaintiff. This evidence included:

—A letter from Defendant's attorney, Philip Klarr, dated December 29, 1977, in which he indicated that Mr. Kriger was

prepared to take out bankruptcy if the case could not be settled for a "reasonable" amount.

—David Jenson's testimony and a letter dated March 2, 1978, written by him in the capacity of Plaintiff's attorney, both of which indicated that a reduced settlement was reached in reliance on the representation that a reasonable settlement would avoid bankruptcy.

—The stipulated Judgment was entered on March 24, 1978.

—Defendant filed his petition for bankruptcy on April 13, 1978, prior to making any payment under the settlement agreement.

Mr. Kriger, Defendant, disputed Plaintiff's contention that he never intended to pay. Defendant offered the following evidence in support of his contention that the required scienter under § 17a(2) was absent:

—Defendant's testimony that at the time of the agreement he intended to abide by the terms of the settlement (i. e., $100 per month).

—Defendant's testimony that at the time he entered into it, he believed he could comply with the terms of the agreement. That upon the realization that he would not be able to comply with the terms, he requested a modification of the agreement to provide an extension of time for tendering the first payment and/or a reduction in the monthly payment amount. Defendant further testified that his financial condition had deteriorated during the period of negotiation of the settlement.

Defense counsel argued that Defendant's actions which were inconsistent with an intention not to abide by the settlement from its inception included:

—Defendant hired an attorney to engage in negotiation of a settlement when he could have let the action go by default.

—Defendant communicated an inability to make the first payment to Plaintiff's counsel and requested a modification of terms.

—Defense counsel pointed out that Defendant at no time made an express waiver of his right to petition for bankruptcy.

Defense counsel argued that at no time did bankrupt Kriger explicitly assure Plaintiff that Kriger would not petition for bankruptcy until the settlement was fully paid. In fact, the stipulated testimony of Philip Klarr, an attorney who represented Kringer throughout the settlement negotiations, was that Klarr's settlements in negotiation of the settlement with regard to Kriger's intentions were not intended to constitute, nor in his judgment did reasonably constitute, a guarantee that Kriger would not petition for bankruptcy until the settlement was paid. Thus, the representations Plaintiff alleges were the basis of his reliance were by implication at best.

It is a well settled principle that an advance agreement to waive the benefit of a discharge in bankruptcy is wholly void, as against public policy. *Fallick v. Kehr*, 369 F.2d 899, 906 (2nd Cir., 1966); *Federal National Bank v. Koppel*, 253 Mass. 157, 148 N.E. 379 (1925); *In re Weitzen*, 3 F.Supp. 698 (S.D.N.Y., 1933).

It is provided in § 63 of the Bankruptcy Act, 11 U.S.C. § 103a, that debts of the bankrupt may be proved and allowed against the estate which are founded upon "(1) a fixed liability as evidenced by a judgment . . . absolutely owing at the time of the filing of the petition by or against him, whether then payable or not . . .". In determining whether a particular debt is excepted from discharge in bankruptcy under § 17a(2), the controlling factor is the actual character of the liability. Normally, the determination of dischargeability of a judgment requires inquiry behind the judgment to determine the essential nature of the liability and the fact that a claim or debt has been reduced to judgment does not prevent such inquiry. *In re Johnson*, 211 F.Supp. 337, 345 (D.C. N.J., 1962), *In re Houtman, supra.*

Plaintiff contends that the conduct of Defendant with regard to the automobile

accident which caused Plaintiff's injuries was "willful and malicious" within the meaning of § 17a(8) of the Bankruptcy Act and thus should be excepted from discharge. The factual circumstances of the accident were not litigated in Lane County Circuit Court because the Judgment was stipulated to and there was no trial on the matter. The complaint filed in the case (Exhibit "A") alleged simple negligence on the part of Mr. Kriger as the cause of Plaintiff's injuries. It included no prayer for punitive damages. The Stipulated Judgment itself (Exhibit "B") contains no recitals as to the basis for the judgment.

The Court in *In re Jarreau*, 422 F.Supp. 947 (D.C.M.D.La., 1976), in delineating the referee's task of determining whether the debtor's actions were such as to fall within the § 17a(8) exception to discharge, cites *Fierman v. Lazarus*, 361 F.Supp. 477 (E.D. Pa., 1973):

"... (W)here a judgment is involved and bankruptcy is pleaded as a bar to Plaintiff's action on the judgment, the Court is not concluded (sic) by the form of the judgment, by the recitals of the judgment, by the form of the action, nor even by the allegations of Plaintiff's complaint, but may resort to the entire record to determine the character of the claim and whether it comes within the purview of § 17. In determining the nature of Defendant's original liability, the Court may ... hear extrinsic evidence to aid in that determination."

*Jarreau* involved a determination of the dischargeability of a claim based on a default judgment taken in an action seeking recovery for injuries and damage sustained in an automobile accident. *Fierman* was also cited in *Matter of Pigge*, 539 F.2d 369 (4th Cir., 1976). *Pigge* also stated that for a claim, previously reduced to judgment in State Court, the Bankruptcy Court, in exercise of its exclusive jurisdiction to determine dischargeability of a debt, may look behind the judgment itself at the nature of the underlying claim and in doing so is not confined to the record in the State Court, but when necessary to ascertain the nature

of the claim, admit and consider extrinsic evidence. See, also, *In re Houtman, supra.*

To constitute a prima facie case for "willful and malicious" under § 17a(8), in *Jaco v. Baker*, 174 Or. 191, 148 P.2d 938 (1944) the Court said:

"The term 'malicious' as used in the Bankruptcy Act provision that liability for willful and malicious injuries to person or property of another are not dischargeable has the same meaning as that ascribed in Oregon to the term 'malice' for which punitive damages may be awarded, which term comprehends a tort committed with a bad motive, or so recklessly as to imply a disregard of social obligations or an act wantonly, maliciously or wickedly done."

*Jaco* involved a judgment based on an action for injuries from a dog bite predicated on the Defendant's willful and intentional act of knowingly keeping a vicious dog. The Court found that the willful and malicious character of the act was implicit in the cause of action asserted and thus was not dischargeable.

The cases disclose no precise definition of what amounts to a willful and malicious injuring of another sufficiently reprehensible to bring the liability within the scope of § 17. Examination of the cases reveals that rarely does a single act of negligence constitute a non-dischargeable liability. The motorist's entire course of conduct is to be considered and the existence of willful misconduct is essentially a factual question. *Meyer v. Blackman*, 59 Cal.2d 668, 31 Cal.Rptr. 36, 381 P.2d 916 (1963).

The fact that one injures another as result of driving while intoxicated does not necessarily establish that injury was maliciously or willfully inflicted. *Dillard v. Dillard*, 244 Or. 597, 418 P.2d 839 (1966). "Grossly excessive" speed, by itself, will not preclude discharge. *In re Vena*, 46 F.2d 81, 82 (D.C.W.D.Wash., 1930). In *Freedman v. Cooper*, 126 N.J.L. 177, 17 A.2d 609 (1941), a default judgment, based upon a complaint that Defendant's car was driv-

en at an excessive rate of speed; that it was without brakes; that the car was not under proper control; and that the car was driven without proper care in regard to the rights of the Plaintiff, was held not within the exceptions of § 17 and dischargeable. The Court determined that "the act upon which recovery was had was one of negligent driving, without the least intent to injure Plaintiff, and without that general disregard of human life which is sometimes interpreted as 'malice' ".

 Violation of a brake-safety statute alone will not constitute wilful and malicious conduct. *Harrell v. Ames*, 265 Or. 183, 508 P.2d 211 (1973).

The evidence offered at trial with regard to the April 18, 1977 automobile accident which gave rise to Plaintiff's claim included testimony from Bruce Kriger, his wife Lorna Kriger, and Ellen Rosenblum, an attorney formerly representing Mr. Johnson.

Evidence of Plaintiff's contentions in support of the assertion that Defendant's conduct with regard to the accident was willful and malicious was provided primarily through the testimony of Ellen Rosenblum. Ms. Rosenblum testified that she was present at an informal deposition on February 20, 1978 at which statements were made by the Defendant, Bruce Kriger, regarding the accident. She took notes at the deposition and based her testimony on her "refreshed recollection". She testified that Mr. Kriger stated:

—That he was on his way to work.
—Kriger felt the Johnson vehicle was going to proceed through a yellow light at an intersection and Kriger attempted to "make the light" as well. Johnson, however, stopped at the intersection and the Kriger vehicle collided with the rear of Johnson's vehicle.
—Only Kriger's front brakes were working. Kriger knew about the brake problem because he had run into the rear end of another vehicle earlier that week.
—Kriger used the emergency brake to activate the rear brakes.
—He had possibly smoked marijuana the day of the accident.

Mr. Kriger's testimony at the trial differed from the statements attributed to him by Ms. Rosenblum. He testified:

—He was on his way to work following the Johnson vehicle by approximately 35 feet. He felt Johnson was going to proceed through the intersection. When he saw Johnson stop, he activated his brakes about 20 feet from Johnson. He put on his emergency brake within 15 feet as an extra precaution.
—He felt the brakes on the 1966 Rambler were adequate for stopping although the rear brakes could have used an adjustment for greater efficiency.
—He had driven the car before (belonged to his now wife) and experienced no brake difficulty.
—He attributed the previous accident to wet and slippery road conditions. In that accident the front brakes on the Rambler "locked up", but he felt that brake difficulty was unrelated to the need for rear brake adjustment.
—He had no specific recollection of smoking marijuana on the day of the accident, although admitted to use of the drug. He said it was "unlikely" he would smoke prior to work as he realized the potential danger to coworkers.

Lorna Kriger testified:
—She owned the 1966 Rambler which she loaned to Defendant.
—She drove the car during the week of the accidents and experienced no trouble stopping the car.
—She was unaware of any brake problems.

Defense counsel argued that there was no evidence that Defendant's actions were influenced by intoxicants. No evidence was offered as to the actual condition of the brakes on the Rambler at the time of the accident other than Defendant's vague statements; nor was the evidence conclusive regarding Defendant's knowledge of the effectiveness of the brakes on the car.

The evidence does not indicate Kriger was operating the vehicle at excessive speed

and indicates that he did activate the emergency brake to aid in stopping the vehicle. These are not actions of one intentionally, willfully and malicious disregarding his duties.

 Kriger's actions, at most, amount to negligence. A claim based merely on negligence does not constitute willful and malicious injury under § 17 and is therefore dischargeable. The Plaintiff's burden of proof has not been met.

Each party shall bear his own costs in this proceeding.

Defendant may present proposed Findings of Fact, Conclusions of Law and separate Judgment consistent with this Opinion within 10 days hereof, with proof of service upon counsel for the Plaintiff.

If no request for modification of the proposed Findings and Conclusions be made by the Plaintiff within five days after such service, if the proposed Findings and Conclusions conform to this Opinion, the Court will proceed to enter them.