**In re Donald GILLESPIE, fdba Gold Rush Inn; Roseburg Flight Center; G & J Investments, Inc.; Gillespie Realty, Debtor.**

**Mildred PLUMMER, Plaintiff,**

v.

**Donald E. GILLESPIE, Defendant.**

**Bankruptcy No. 680–06073.
Adv. No. 680–6043.**

United States Bankruptcy Court,
D. Oregon.

March 26, 1981.

Thomas B. Brand, Salem, Or., for plaintiff.

James D. Vick, Salem, Or., for defendant.

### OPINION

C. E. LUCKEY, Bankruptcy Judge.

Mildred Plummer, plaintiff herein, filed a complaint seeking judgment for the unpaid balance of a $9,000 promissory note, accrued interest, $50,000 in exemplary damages and a determination that the debt be nondischargeable in bankruptcy pursuant to § 523(a)(2)(A) of the Bankruptcy Code. A pre-trial Order was lodged November 14, 1980 and trial on the matter was held December 2, 1980 at Eugene with Merry C. Rolfe, Court Reporter, recording the proceedings. Both parties appeared at trial represented by counsel and both submitted post-trial briefs.

This proceeding arises from a transaction involving the exchange of defendant's promissory note (attached to the pre-trial Order as Exhibit "A") for a loan of $9,000 by plaintiff in the form of a cashier's check on August 28, 1978. Evidence shows that only $596 has been paid on the note by the defendant representing accrued interest through January, 1979.

Plaintiff contends that she was induced to loan the $9,000 to defendant by defendant's representations of ownership interest in certain described real property and by defendant's representations that plaintiff's interest in payment evidenced by defendant's promissory note would be secured by the property. Plaintiff further contends that defendant never had an ownership interest in the real property, that defendant made that false representation with the fraudulent purpose and intent of inducing the loan from plaintiff, and that plaintiff relied on that materially false representation to her detriment.

Defendant contends that he apprised plaintiff of his contingent interest in the real property, that he represented to her the $9,000 advanced by plaintiff was to be used in obtaining an ownership interest in the real property and that plaintiff would be granted a security interest in real property when and if such ownership interest were obtained, although he acknowledged she may not have understood it.

The transaction between plaintiff and defendant was related to defendant Donald Gillespie's efforts to create a subdivision in Polk County, Oregon. The defendant obtained an interest as purchaser in a land sale contract from a John Pumphrey, Jr., doing business as Horizon Properties, Inc., in exchange for an agreement by defendant to share the profits for development of the subdivision with Mr. Pumphrey. The earnest money agreement, entered into by defendant on September 14, 1978, conditioned

performance upon approval of the subdivision plat. It must be noted that these actions were undertaken by Donald Gillespie as president of G and J Investment, Inc., a corporation wholly owned by defendant and his wife. The agency relationship, however, does not relieve the defendant from individual liability for his own wrongful acts. *Murphy Tugboat Company v. Shipowners and Merchants Towboat Co., Ltd.,* 467 F.Supp. 841, 852 (N.D.Cal.1979).

The subdivision of defendant's company was disapproved by the City of Dallas, Oregon Planning Commission, but the Dallas City Council reversed the decision of the Planning Commission. Neighbors to the proposed subdivision then filed an appeal of this approval for the purpose of stopping the development of the subdivision. The delay in approval which resulted from this appeal and the changed economic conditions, according to defendant's testimony at trial, resulted in withdrawal of an existing bank contingent loan commitment and were fatal to the project and plans for development of the subdivision were frustrated.

Section 523(a)(2)(A) of the Bankruptcy Code provides as follows:

"(a) a discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition;"

Section 17(a)(2) of the Bankruptcy Act, the forerunner of § 523(a)(2), was incorporated into § 523 with very little substantive change. Existing case law construing § 17(a)(2) is applicable in interpreting § 523(a)(2)(A). *In re Foreman,* 7 B.R. 776, 778 (Bkrtcy.D.S.D.1980); *In re Miller,* 5 B.R. 424, 427 (Bkrtcy.W.D.La.1980).

This Court set out in *In re Kriger,* 2 B.R. 19, 22 (Bkrtcy.D.Or.1979) the five-part test for determining when a debt is nondischargeable under § 17(a)(2) as adopted by the Ninth Circuit in *In re Houtman,* 568 F.2d 651, 655 (9th Cir. 1978). The elements of proof to be established by the plaintiff are as follows:

"(1) That the debtor made the representation.

"(2) That at the time he knew they were false.

"(3) That he made them with the intention and purpose of deceiving the creditor.

"(4) That the creditor relied on such representations.

"(5) That the creditor sustained the alleged loss and damage as the proximate result of the representation made."

Burden of proof is on the plaintiff to show that the debt should be excepted from discharge. *Kriger,* supra, at 21.

The evidence is in conflict as to what representations the defendant actually made to plaintiff. Defendant testified that he apprised the plaintiff that any property which would secure his obligation to her was contingent on approval of the subdivision, that at the time he exchanged his note for plaintiff's money indications were favorable that the plat would be approved and that he intended to pay plaintiff back, at least in part, with funds to be obtained from a bank loan for which he had a commitment on the condition that the plat were approved.

Plaintiff testified that she initially heard about the investment arrangement with defendant through her son, an acquaintance of the defendant, that she was inexperienced in financial matters and didn't recall exactly what was told to her by defendant but that she was assured she would be well protected. Plaintiff could not recall specific representations at the time she received the note to the effect that defendant possessed an ownership interest in real property and that she may have assumed defendant owned the real property, and that she was well protected and testified that she would not have made the loan without security.

Plaintiff's attorney offered the note itself which contained the notation "This note is secured by Lot # 31, Horizon Estates, Dallas, Oregon" as an affirmative false representation intended to induce the loan from plaintiff. Plaintiff's counsel elicited from defendant that no Lot # 31 in fact existed at the time the note was given, and that no such lot number or security therein in favor of plaintiff existed. Defendant explained that the intention was to grant a security interest in a lot after the plat was approved and that the language on the note should have said and meant to read "This note is [to be] secured by Lot # 31 ...". However, the recitation did not stop there. It was followed by a payment date which had been erroneously typed and was modified and initialed by the plaintiff and defendant, indicating clear attention to the terms of the note, including the language relating to security.

■ Counsel for plaintiff further offered a copy of a trust deed, executed by defendant in favor of plaintiff on September 27, 1978, and a copy subsequently tendered to plaintiff in which property the evidence established the defendant had no ownership as represented.

The document was false in its sworn recitations, and although it did not induce the loan, is indicative of an initial fraudulent scheme to support the recitation on the note given to induce the loan.

The defendant was a man experienced in financial transactions involving real estate and the plaintiff was an elderly lady formerly employed as a seamstress who relied upon representations made to her to her detriment, and as a proximate result of the false representations of the defendant suffered the loss complained of for which the plaintiff is entitled to Judgment.

■ The prayer of the plaintiff for exemplary damages must be denied. The evidence clearly establishes that the loan was procured by false and fraudulent representations. As in the case of the classical optimistic embezzler, this false procurement does not eliminate the intent to later make payment when conditions permit.

The defendant is able to establish mitigating circumstances of genuine effort to develop a project upon approval of which proceeds of the contingent loan commitment would have been available and according to the unrefuted testimony used to repay the plaintiff. The development was so long delayed by nit-picking bureaucratic roadblocks that the loan commitment was withdrawn, economic conditions changed to frustrate it, and the development failed. Such frustrations can well be anticipated in today's world, and cannot serve to deny the plaintiff's relief for actual damages on the facts of this case, but they leave no basis to impose upon the defendant otherwise demonstrating good faith a requirement of exemplary damages deterrent.

## FINDINGS OF FACT

1. Defendant Donald Gillespie executed and tendered a note to plaintiff Mildred Plummer in exchange for a $9,000 loan, which note contained the language "This note is secured by Lot # 31, Horizon Estates, Dallas, Oregon".

2. The representation of security for the loan was false and defendant knew it was false at the time he made it.

3. Defendant made the representation with the intention and purpose that plaintiff rely upon the representation to induce the $9,000 loan.

4. Plaintiff relied on the representation and as a proximate result sustained the loss for which she seeks relief here.

Defendant's course of conduct was not of a sufficiently aggravated character to justify assessment of punitive damages against him, considering all the factors outside defendant's control which served to frustrate approval of the project, which would have resulted in funds to repay the loan.

## CONCLUSIONS OF LAW

1. Plaintiff has carried her burden of proof as to each element necessary to establish defendant's obligation to her as nondischargeable, pursuant to 11 U.S.C. § 523(a)(2)(A).

2. Plaintiff is entitled to judgment for the sum of $9,000 plus interest at the rate of 9% per annum from the date of this Judgment and $60 for costs, and this obligation is nondischargeable in bankruptcy.

3. Plaintiff is not entitled to exemplary damages.