In re Bruce Kenneth MINOR, d/b/a Minor Investments, Stuyvesant Investments Economy Autosupply, Debtors.

Ronald L. CHILCOAT and Bunny Chilcoat, Plaintiffs–Appellees,

v.

Bruce K. MINOR, Defendant–Appellant.

No. 89–K–1516.
Bankruptcy No. 88 B 6963 C.
Adv. No. 88 J 864.

United States District Court, D. Colorado.

June 7, 1990.

John Preston Baker, G. Stephen Long, Coghill & Goodspeed, Denver, Colo., Ronald D. Lee, Michael P. Joyce, Koenigsdorf & Wyrsch, Kansas City, Mo., for Chilcoats.

Robin Kert Hunt, Denver, Colo., for Minor.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The issue in this appeal is whether a debtor's waiver of dischargeability of a debt, made in settlement of a creditor's adversary action in state court, is enforceable in bankruptcy court. The debtor, Bruce Kenneth Minor, argues that the bankruptcy court erred in finding that his waiver was effective under § 727(a)(10) of the Bankruptcy Code. He contends that a waiver of the dischargeability of a single debt must comply with requirements of § 524(c), not § 727(a)(10), and that his waiver was ineffective. I agree, and remand.

### I. *Facts.*

On March 24, 1987, Ronald L. and Bunny Chilcoat commenced an action against Mr. Minor in Kansas state court. The Chilcoats alleged that Minor violated Kansas securities laws, engaged in common law fraud and conversion and breached his contract with the Chilcoats for the purchase of shares of stock in Minor's corporation. The Chilcoats also claimed that Minor owed Mr. Chilcoat back pay and statutory damages for wages earned during his employment with Minor's corporation. The Chilcoats additionally requested compensation for certain office equipment they purchased for the corporation. On May 27, 1988, the state court action was stayed by Mr. Minor's Chapter 7 bankruptcy filing.

Several months later, the Chilcoats filed a proof of claim in the bankruptcy court and a motion for relief from the stay to proceed with their state court action against Mr. Minor. On September 14, 1988, the bankruptcy court entered its order modifying the stay and permitting the state court action to go forward, expressly reserving to itself the determination of whether any resulting debt would be nondischargeable. On October 11, 1988, the Chilcoats filed a complaint in the bankruptcy court to have their claim against Mr. Minor declared nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code.

The state court case was set for trial on March 27, 1989. After negotiations in the presence of the trial judge, the parties reached a settlement. The settlement was incorporated into a stipulated judgment, entered on April 5, 1989, whereby the Chilcoats dismissed all of their claims against Mr. Minor except for the securities and common law fraud claims (Counts I and II). The judgment further provided in paragraphs three and four:

3. Plaintiffs and Defendant agree that this judgment is not an admission or confession that Defendant has committed securities fraud or common law fraud, but is merely for the purpose of incorporating the settlement of the parties in

lieu of litigation of the securities fraud and common law fraud claims.

4. Notwithstanding the foregoing, because the underlying claims are based on securities fraud and common law fraud, it is the intent of the parties and of the Court that this judgment should not be dischargeable in bankruptcy. Defendant agrees that he will not seek to discharge this judgment in bankruptcy and that he will take whatever steps may be necessary, including the filing of any stipulations or pleadings, to prevent the discharge of this judgment in bankruptcy.

R. Vol. I, Doc. 10, Ex. A at 1–2. Judgment was then entered in favor of the Chilcoats in the amount of $15,000.[1] Mr. Minor was not represented by counsel during the settlement negotiations.

On April 21, 1989, the Chilcoats filed a motion requesting the bankruptcy court to take judicial notice of the state court judgment in their nondischargeability action. The court granted this motion on April 25, 1989. In their joint pre-trial statement, the parties listed two disputed issues: (1) whether the state court judgment should be given collateral estoppel effect in the nondischargeability action and (2) whether the state court judgment was otherwise nondischargeable under § 523(a)(2)(A). *Id.* Doc. 7 at 2. They further indicated that matter could be determined on the briefs. *Id.*

On June 28, 1989, the bankruptcy court entered its findings, conclusions and order on the Chilcoats' § 523(a)(2)(A) action. On the first issue, the court ruled that the state court judgment did not have preclusive effect:

Here, pursuant to the agreement of the parties which resulted in the settlement, there are no findings in the State court judgment that defendant committed securities or common law fraud, or any other wrongdoing, for that matter. As is clear from the transcript of proceedings in the State court action, the

omission of any such findings was specifically agreed to by plaintiff as a "trade off" for defendant's assurances that he would not seek to discharge the judgment in bankruptcy and his concession that the same should be non-dischargeable.

*Id.* Doc. 19 at 5. Nevertheless, the bankruptcy court concluded that the state court judgment was nondischargeable because Mr. Minor had made a waiver of discharge under § 727(a)(10) of the Bankruptcy Code. The court reasoned that Mr. Minor's statements in the state court settlement negotiations "are susceptible of the construction that they constitute a waiver," *id.* at 6, even though "the [s]tate court judgment does not on its face meet the requirements of § 727(a)(10)...." *Id.* at 7. Finally, the court concluded that this was the equitable result:

To hold otherwise would permit debtor to effect a favorable settlement of a substantial fraud action, primarily upon the strength of multiple assurances that the debt created by the settlement would not be discharged in debtor's bankruptcy, and to return to this court and insist that the issues settled in the State court must be relitigated in order to determine the dischargeability of the debt.... 

... [P]rinciples of judicial economy and equity combine to fairly shout that plaintiffs not be required to once again prepare for trial in the State court action only to have [the] debtor once again attempt to perpetrate what approaches a fraud on not only the State court but on this court as well, by making assurances out of one side of his mouth and retracting them out of the other.

*Id.* at 7–8. Mr. Minor now appeals this ruling.

## II. *Issues.*

### A. *Waiver under § 727(a)(10) of the Bankruptcy Code.*

■ Mr. Minor's first argument in this appeal is that § 727(a)(10) of the Bankrupt-

---

**1.** *Execution of the judgment was stayed, provided that Mr. Minor made an initial payment of $5,000 to the Chilcoats by April 21, 1989 and twenty-four equal monthly payments of $100 commencing on June 1, 1989. If Mr. Minor* failed to make any of the above payments within a thirty-day cure period, the entire $15,000 judgment was to become immediately due and payable. *Id.* at 3.

cy Code does not apply to a waiver of an individual debt and that the bankruptcy court's reasoning was in error. The Chilcoats assert, however, that the § 727(a)(10) waiver of discharge is not necessarily a waiver of discharge as to all indebtedness and can apply to the waiver of a single debt. Mr. Minor's position is the correct one.

Section 727(a)(10) of the Bankruptcy Code provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter.

11 U.S.C. § 727(a)(10). There is little authority interpreting this section of the Code. *See Indiana Nat'l Bank v. Lones (In re Lones)*, 50 B.R. 801, 802 (Bankr. W.D.Ky.1985). One of the few cases on point is *Klingman v. Levinson (In re Levinson)*, 58 B.R. 831 (Bankr. N.D.Ill.), *aff'd*, 66 B.R. 548 (N.D.Ill.1986), *aff'd*, 831 F.2d 1292 (7th Cir.1987). In that case, a creditor bringing a nondischargeability action moved for summary judgment based on the collateral estoppel effect of a state court stipulated judgment. The judgment recited that the debtor agreed that " 'it [was] his intention that the obligation to the Plaintiff created by this Agreed Judgment Order not be dischargeable in any bankruptcy or similar proceeding....' " *Id.* at 833.

Although the court in *In re Levinson* ultimately granted the motion for summary judgment based on collateral estoppel, it gave "no weight to that portion ... of the state court's judgment order that specifically stated that the parties agreed that the debt would not be discharged in bankruptcy." *Id.* at 836. It reasoned that public policy does not permit the debtor, pre-bankruptcy, to contract away the right to the discharge of a debt, nor can a state court judgment limit the availability of the discharge. *Id.* at 836–37 & n. 4. Only those debts expressly delineated in the Bankruptcy Code are nondischargeable. Finally, the court found that there had been no effective waiver of discharge, making special note of the difference between a waiver of discharge under § 727(a)(10) and the reaffirmation of a single debt under § 524(c):

Three conditions must be met for a waiver of discharge to be valid under the Bankruptcy Code: it must be in writing, signed by the debtor after the order for relief, and approved by the court. Since there is no evidence of a postpetition waiver of discharge here, the debtor has not waived his right to a discharge. Waivers of dischargeability of any particular debts should be governed by the reaffirmation rules. In the context of this pre-Bankruptcy Amendments and Federal Judgeship Act of 1984 version of the Bankruptcy Code governing this case, that would have required the debtor to reaffirm the state court judgment (a nonconsumer debt) before discharge. Obviously, that procedure was not followed in this case.

*Id.* at 837 (citations and footnote omitted); *see also In re Lones*, 50 B.R. at 803 (distinguishing between reaffirmation under § 524 and waiver under § 727); *Taylor v. King (In re King)*, 18 B.R. 181, 182 (Bankr. D.R.I.1982) (same).

This analysis is echoed in 4 *Collier on Bankruptcy* ¶ 727.12 at 727–88 to 89 (L. King 15th ed.1990) (footnotes omitted):

A distinction must be drawn between a waiver of discharge under section 727(a)(10) and a reaffirmation or exception of a specific debt from discharge. The waiver under section 727(a)(10) is a waiver of any discharge at all. Thus none of the debtor's debts are discharged. The debtor's property is administered by the trustee but any unpaid debts survive. While the court must approve the waiver, there are no statutory standards for approval.

In order to waive the discharge of an individual debt, the debtor must reaffirm the debt pursuant to section 524. The reaffirmation is subject to specific statutory procedures, standards and safeguards. A debtor and creditor should not be permitted to use section 727(a)(10) to avoid the reaffirmation provisions.

Although there have been several cases in which a waiver of an individual debt has been permitted under § 727(a)(10), *see, e.g., In re Mapother*, 53 B.R. 433, 436 (Bankr. W.D.Ky.1985); *cf. Rhodes v. Rhodes (In re Rhodes)*, 44 B.R. 79, 80 (Bankr. D.N.M. 1984) (addressing debtor's argument that nondischargeability stipulation in property settlement agreement violated § 727(a)(10)), these cases should be viewed as aberrations. *See 4 Collier on Bankruptcy, supra*, at 727–89 n. 2.

In this case, the bankruptcy court relied on § 727(a)(10) to uphold Mr. Minor's waiver of the dischargeability of the Chilcoats' judgment against him. Section 727(a)(10) does not apply to this case, because Mr. Minor waived the discharge of a single debt, not all of his debts. The conclusion that Mr. Minor's attempted waiver of dischargeability was appropriate under § 727 was an incorrect reading of that statute.

B. *Waiver under § 524(c) of the Bankruptcy Code.*

■ As the above authorities make clear, the debtor's agreement to waive dischargeability and reaffirm a debt to a particular creditor is governed by § 524(c) of the Bankruptcy Code. Mr. Minor further argues, however, that his waiver of dischargeability did not comply with the requirements of this section and is therefore ineffective. His argument has merit, although there is conflicting authority that § 524(c) does not apply to this situation and that his waiver was effective.

■ Section 524(c) provides detailed requirements for the approval of a reaffirmation agreement. Under this section, "[a]n agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable ..., whether or not discharge of such debt is waived" only under specific conditions. 11 U.S.C. § 524(c). The agreement must have been made before discharge and it must be filed with the court. *Id.* § 524(c)(1), (c)(3). It must contain "a clear and conspicuous statement" that the debtor may revoke the agreement within 60 days of its filing (or until discharge, whichever occurs later), and the debtor must not have exercised the option to revoke. *Id.* § 524(c)(2), (c)(4). If the debtor was represented by an attorney during the negotiation of the agreement, the attorney must include an affidavit reciting that the debtor was fully informed about the agreement and that it does not impose an undue hardship on him or his dependents. *Id.* § 524(c)(3). If the debtor has not been represented, the court must hold a hearing and make specific admonishments as provided in § 524(d), *id.* § 524(c)(5), and with certain limitations, it must determine that the agreement does not impose an undue hardship on the debtor or his dependents and is in his best interests. *Id.* § 524(c)(6); *see also Ellis v. Ellis (In re Ellis)*, 103 B.R. 977, 980–81 (Bankr. N.D.Ill.1989).

There is no question that the above requirements were not met in this case. Although the agreement was made before discharge and was filed with court in the form of the state court judgment, it did not contain a clear and conspicuous statement as to the debtor's right to revoke. Moreover, Mr. Minor was not represented by counsel during the negotiations before the state trial judge. Therefore, before any waiver of dischargeability could be effective, Mr. Minor was entitled to a hearing on the agreement with the appropriate admonishments and the bankruptcy court was required to make the § 524(c) findings as to undue hardship and the debtor's best interests. This indisputably did not occur.

The legislative history behind § 524(c) and the 1984 amendments to this section demonstrates Congress' continued concern that a debtor not be unduly pressured into executing a reaffirmation agreement. *Arnhold v. Kyrus*, 851 F.2d 738, 740–41 & n. 2 (4th Cir.1988). Consequently, courts have uniformly recognized that every requirement of § 524(c) must be met or a reaffirmation agreement will have no effect. *Id.* at 740; *In re Churchill*, 89 B.R. 878, 879 (Bankr. D.Colo.1988). Since Mr. Minor's waiver of discharge did not comply with the requirements of § 524(c), the

bankruptcy court's ruling cannot be upheld under this section.

There is one case, however, that suggests by definition § 524(c) does not apply in this situation. In *Martinelli v. Valley Bank of Nevada (In re Martinelli)*, 96 B.R. 1011 (Bankr. 9th Cir.1988), the debtors obtained a loan from their local bank. Three months after receiving the loan, they declared bankruptcy. The bank then filed a complaint in the bankruptcy court alleging that the loan was nondischargeable under § 523(a)(2)(B) because the debtors had submitted a materially false financial statement. On the advice of counsel, the debtors stipulated to a judgment whereby the debt was deemed nondischargeable.

When the debtor failed to make several payments as provided in the decree, the bank moved for enforcement of the judgment. The debtors then sought to have the stipulated judgment set aside, alleging ineffective assistance of counsel and claiming that it failed to meet the requirements of § 524(c). *See id.* at 1012. The bankruptcy court rejected both arguments. On appeal, the district court addressed the debtors' argument that the stipulated judgment was ineffective under § 524(c):

> Finally, the Martinellis argue that the stipulated judgment did not comply with the requirement for reaffirmation of a dischargeable debt under § 524(c) and (d). As the bankruptcy court noted in its Memorandum Decision, § 524 does not apply to the stipulated judgment in this case....
>
> Section 524(c) by its express terms only applies to debts that are dischargeable. In this case, the stipulated judgment entered into by the parties provided that the debt was nondischargeable. Thus, where the parties have stipulated that the debt is nondischargeable, the provisions of § 524(c) are not applicable.

*Id.* at 1014.

I think *In re Martinelli* rests on weak ground. *In re Martinelli* suggests that any stipulation of nondischargeability is effective to circumvent the requirements of § 524(c). In so holding, the court overlooks the language of § 524(c) which pro-vides that to be enforceable, a reaffirmation agreement must meet the requirements of the statute "whether or not discharge of such debt is waived." 11 U.S.C. § 524(c). This language suggests that Congress was greatly concerned that a debtor waiving dischargeability of a particular debt be afforded the procedural protections provided in § 524(c), regardless of any pre-existing agreement as to nondischargeability.

This interpretation is reflected in a similar case, *Doug Howle's Paces Ferry Dodge, Inc. v. Ethridge (In re Ethridge)*, 80 B.R. 581 (Bankr. M.D.Ga.1987). The debtor in that case was sued pre-bankruptcy by a creditor seeking to recover funds for bad checks. The state court action was settled and a consent judgment entered which provided that the debtor "agreed that the consent judgment would be considered an agreement under § 524(c) of the Bankruptcy Code, that he would not seek to discharge the judgment under any provision of the Bankruptcy Code, and that the judgment would not be dischargeable in bankruptcy." *Id.* at 585. After the debtor declared bankruptcy, the creditor sought enforcement of the consent judgment. The bankruptcy court rejected the creditor's argument that the judgment was enforceable under § 524(c). Noting that the decree lacked a conspicuous statement that it could be rescinded as required by § 524(c)(2), the court added:

> If the Court were to adopt Plaintiff's analysis, then creditors would essentially have the power to nullify the fresh start provided by the Bankruptcy Code. One of the central purposes of the Code is to give debtors " '... new opportunity in life and clear field for future effort, unhampered by pressure and discouragement of preexisting debt....' " Plaintiff's argument is contrary to the spirit of the Bankruptcy Code. The Court concludes, therefore, that the provisions of the consent judgment which pertain to the waiver of Defendant's right to a discharge are void.

*Id.* at 586.

Although there is a ring of truth to the bankruptcy court's comment that the debt-

or should not be permitted to "mak[e] assurances out of one side of his mouth and retract[ ] them out of the other," *see* R. Vol. I, Doc. 19 at 8, had the agreement been properly effected under § 524(c), Mr. Minor would have had an absolute right to rescind for a certain time period. Failing to enforce the waiver will multiply the proceedings because the bankruptcy court will now be required to make an independent determination as to nondischargeability. Nevertheless, this result is required if the congressionally mandated protections of § 524(c) are to have any force.[2]

C. *Fraudulent Inducement of Settlement as Nondischargeable under § 523(a)(2)(A) of the Code.*

■ The Chilcoats assert an alternative basis upon which to affirm the bankruptcy court's ruling in this matter. They argue that Mr. Minor's breached promise not to seek discharge of the judgment debt constitutes misrepresentation in and of itself sufficient to deny the discharge of the debt under § 523(a)(2)(A), relying on the pre-Code case of *Zarate v. Baldwin (In re Baldwin),* 578 F.2d 293 (10th Cir.1978).

In *In re Baldwin,* the creditor brought a claim against the debtor in state court for medical malpractice. The parties reached a settlement, and a judgment entered by the state court incorporated the terms of that settlement. The creditor received a monetary award from the debtor, to be paid in installments. The judgment further recited that " '[T]he debt herein stated shall not be provable or dischargeable in bankruptcy.' " *Id.* at 294. Several years later, the debtor filed for bankruptcy and sought to discharge his debt to the creditor. Evidence at the nondischargeability hearing revealed that, at the time of the settlement negotiations, the creditor knew that the debtor had previously declared bankruptcy "and that she agreed to the settlement only upon [the debtor's] assurance that he intended to pay in full and that the debt would not be affected by subsequent bankruptcies." *Id.* at 294.

In affirming the bankruptcy and district court's rulings that the judgment debt was nondischargeable under the precursor to § 523(a)(2)(A), the Tenth Circuit concluded that Baldwin's agreement to the settlement clause waiving discharge and his underlying agreement to pay damages "is at the very least a representation that Baldwin intended to pay the debt in full, regardless of future bankruptcies." *Id.* This, coupled with other deceptive conduct, justified denial of discharge for his misrepresentation. In reaching this conclusion, the court made clear that it did not address the enforceability of the contractual waiver of discharge itself. *Id.* at 295.

*In re Baldwin* is distinguishable from the circumstances at bar. First, the debtor's deceptive conduct in that case took place well before his bankruptcy, and his course of conduct indicated a constant attempt to thwart the settlement agreement through a later bankruptcy. In this case, during the pendency of the Chilcoat's state court action, Mr. Minor declared bankruptcy. The bankruptcy court lifted the stay to permit the state court action to go forward, expressly reserving to itself the determination of the dischargeability of any resulting debt. Second, the Chilcoats' argument that Mr. Minor's conduct in state court was of itself misrepresentation is not persuasive; Mr. Minor has a statutory right to rescind his agreement to reaffirm a debt under § 524(c)(2). There was no similar statutory provision in effect at the time *In re Baldwin* was decided. The Chilcoats' attempt to analogize this case to *In re Baldwin* must be rejected.

D. *Other Bases for Affirmance.*

■ The Chilcoats offer two additional bases for affirmance. First, they assert that the bankruptcy court had the authori-

---

**2.** Although neither party has raised this issue, there may be an additional problem created by recognizing the waiver provision of the state court judgment. Since the bankruptcy court expressly reserved to itself the issue of dischargeability in its order modifying the stay, and since this issue is solely one of federal law, I question whether the state court ever had jurisdiction to enter any finding or ruling on dischargeability. *See In re Levinson,* 58 B.R. at 837 n. 4 (noting that a state court judgment cannot limit the availability of a discharge).

ty to enforce Mr. Minor's waiver of dischargeability pursuant to its equitable powers under 11 U.S.C. § 105(a). This section authorizes the bankruptcy court to "issue any order ... that is necessary or appropriate to carry out the provisions of this title." *Id.* It "merely codifies the traditional equity powers of the bankruptcy court." *Amtol Corp. v. United States (In re Amtol Corp.),* 57 B.R. 724, 726 (Bankr. N.D. Ohio 1986). Section 105(a) does not authorize the court to enter orders which are in conflict with other provisions of the Code. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988); *Johnson v. First Nat'l Bank of Montevido,* 719 F.2d 270, 273 (8th Cir.1983); *In re Rashid,* 97 B.R. 610, 615 (W.D. Okla.1989). Since enforcement of Mr. Minor's waiver would violate the provisions of § 524(c) of the Code, enforcement under § 105(a) is inappropriate.

■ Second, the Chilcoats argue that this court may go behind the allegations in the complaint upon which the state court judgment was based to determine nondischargeability, relying on *In re Nadler,* 424 F.Supp. 1106 (E.D. Mo.1976). In *In re Nadler,* however, the creditor's state court action "was settled by consent of the parties with the bankrupt's agreeing to Count II of the complaint and judgment awarded to the plaintiffs...." *Id.* at 1107. Count II incorporated claims for violations of both state and federal securities laws. *Id.* The court found that the debtor's consent to the decree was tantamount to an admission of liability for fraud. *Id.* at 1107–08.

Here, Mr. Minor's consent to the entry of judgment on Counts I and II of the Chilcoats' complaint was not an admission of liability for fraud. The judgment clearly indicated the parties intent on this subject, reciting that both parties "agree that this judgment is not an admission or confession that Defendant has committed securities fraud or common law fraud, but is merely for the purpose of incorporating the settlement of the parties in lieu of litigation of the securities fraud and common law fraud claims." R. Vol. I, Doc. 10, Ex. A at 1. Therefore, it makes no difference what the underlying allegations of Counts I and II

were because there is no admission of liability on these claims. The logic of *In re Nadler* cannot be applied.

### III. *Conclusion.*

This case presents a choice between enforcing a settlement between the parties, thereby putting an end to litigation, and ensuring that a debtor waiving significant rights under the Bankruptcy Code is afforded important procedural protections. It is complicated by the fact the settlement, as embodied in the state court stipulated judgment, is internally inconsistent. The judgment recites that it is not an adjudication that the debtor committed securities fraud, but that the parties agreed that the debt was nondischargeable. Despite the parties' and the state court's well-intentioned effort to reduce the judicial resources spent to determine dischargeability, their actions relating to the nondischargeability determination took place in the wrong forum and without reference to the appropriate statute.

IT IS ORDERED that this case is reversed and remanded to the bankruptcy court for further proceedings to determine whether Mr. Minor's debt to the Chilcoats is dischargeable.