MASSACHUSETTS HIGHER EDUCATION ASSISTANCE
CORPORATION *vs.* MARSHALL A. TAYLOR.

Suffolk.   October 6, 1983. — January 11, 1984.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Bankruptcy,* Discharge, Student loan.   *Student Loan.*

An obligation on a student loan guaranteed under the provisions of 20
    U.S.C. § 1071 et seq. (1976) is not released by a general discharge in a
    bankruptcy proceeding.  [758-761]
A State court had jurisdiction to determine whether a general discharge in
    a Federal bankruptcy proceeding relieved the debtor of his obligation
    on a guaranteed student loan.  [761-762]

CIVIL ACTION commenced in the Boston Municipal Court
Department on October 21, 1981.

Motions for summary judgment were heard by *Umana,*
J., and *Canavan,* J.

*Stephen E. Woods* for the plaintiff.

*Michael A. Brown* for the defendant.

LYNCH, J.   This is an action of contract in which the
plaintiff, Massachusetts Higher Education Assistance Cor-
poration, seeks to recover the sum of $8,697 loaned to the
defendant, Marshall A. Taylor, plus interest and costs.

The plaintiff's motion for summary judgment was
granted by a judge of the Municipal Court of the City of
Boston.  The Appellate Division of the Boston Municipal
Court vacated that judgment and directed instead that sum-
mary judgment be entered for the defendant.  The appeal
comes to this court pursuant to G. L. c. 231, § 109.  We af-
firm the judgment of the Boston Municipal Court in favor of
the plaintiff.

The facts in this case are not disputed.  Between
September 19, 1974, and April 27, 1977, Taylor executed

four promissory notes to Baybank, Middlesex (Baybank) in conjunction with loans granted pursuant to the Guaranteed Student Loan Program. In Massachusetts this program is administered by the plaintiff pursuant to 20 U.S.C. § 1071 et seq. (1976) (the Higher Education Act of 1965, Pub. L. No. 89-329). Should the student borrower default on a loan, the lender may assign its rights to the Federal guarantor and be reimbursed. 20 U.S.C. § 1080 (a) and (b) (1976). In this case, Baybank assigned all its rights under the promissory notes to the plaintiff.

In October of 1977, Taylor filed a petition for voluntary bankruptcy in the United States Bankruptcy Court. Numerous creditors were listed on his schedule of debts, including Baybank. Baybank was notified of the petition through the procedures required by the Bankruptcy Court, but apparently did not enter an appearance at any time. On December 8, 1977, the Bankruptcy Court allowed Taylor's petition, and an order for payment of dividends was issued. Baybank was not listed as one of the creditors to receive a dividend.

When the plaintiff filed suit in the Boston Municipal Court in 1981 to collect the amount of the loans, Taylor asserted that the judgment of the Bankruptcy Court precluded the plaintiff's recovery. The Appellate Division of the Boston Municipal Court agreed with Taylor. It found that Baybank did not dispute the fact that the loans had been discharged in the bankruptcy proceeding, despite the restrictions in 20 U.S.C. § 1087-3 (1976), which would make loans of this type nondischargeable during the first five years of the repayment period unless a judge specifically found that payment would impose undue hardship on the debtor. The court further found that the Bankruptcy Court has exclusive jurisdiction to revoke a discharge, therefore summary judgment was granted in Taylor's favor. On appeal, the plaintiff argues that, since the Bankruptcy Court did not have the authority to discharge the educational debts, the general discharge should not be understood to include them. In the alternative, the plaintiff attacks the

sufficiency of Taylor's affidavit in support of his motion for summary judgment in light of the requirements of Mass. R. Civ. P. 56, 365 Mass. 824 (1974). Because we decide this appeal on the former issue, we do not reach the latter.

Nonchalance toward the repayment of student loans has become a nationwide scandal. Of an estimated $28.2 billion provided under the Guaranteed Student Loan Program, loans totaling approximately $1.7 billion are in default. N.Y. Times, July 29, 1982, § A at 1, col. 1, § D, at 18, col. 1. More than 800,000 recipients have not repaid their loans. Congress has sought to thwart this trend by, among other things, excluding student loans from the category of debts that may be discharged in a bankruptcy proceeding. The statutes relevant to discharge of educational loans in effect at the time Taylor filed for bankruptcy were 11 U.S.C. § 35 (1976) and 20 U.S.C. § 1087-3 (1976), which specifically provided that educational loans were not dischargeable in the absence of a finding by the Bankruptcy Court of undue hardship. The defendant does not contend that the finding of undue hardship was made.[1] In 1978, that section was removed from the Higher Education Act and incorporated into the new Bankruptcy Act. 11 U.S.C. § 523 (a)(8) (Supp. 1981).[2]

---

[1] 20 U.S.C. § 1087-3 (a) (1976) provided: "A debt which is a loan insured or guaranteed under the authority of this part may be released by a discharge in bankruptcy under the Bankruptcy Act only if such discharge is granted after the five-year period (exclusive of any applicable suspension of the repayment period) beginning on the date of commencement of the repayment period of such loan, except that prior to the expiration of that five-year period, such loan may be released only if the court in which the proceeding is pending determines that payment from future income or other wealth will impose an undue hardship on the debtor or his dependents."

[2] 11 U.S.C. § 523(a)(8) (Supp. 1981) states that a discharge does not release a debtor from liability for any debt to "a governmental unit or a nonprofit institution of higher education, unless —

(A) such loan first became due before five years (exclusive of any applicable suspension of repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents."

When Taylor was adjudged bankrupt in 1977, he received a discharge from his debts. He contends that, since there is no indication to the contrary from the bankruptcy judge, this general discharge covers all debts he listed on his schedule of debts. Under the current Bankruptcy Act, it is clear that the debts for Taylor's educational loans would not have been discharged by a general discharge. Discharges in bankruptcy are governed by the provisions of 11 U.S.C. § 727 (Supp. 1981). Subsection (b) of § 727 provides that a discharge releases the debtor from all debts "[e]xcept as provided in section 523." Section 523 states that "discharge under section 727 . . . does not discharge an individual debtor from any debt" which falls into one of nine particular exceptions, one of which is educational loans. See note 2, *supra*. "A discharge granted under 727(a) does not operate to release an individual debtor from certain debts which are specifically excepted. . . . Nondischargeable debts owed to creditors are not released even though the individual debtor receives a general discharge under section 727(a)." 4 A.S. Herzog & L.P. King, Collier Bankruptcy Practice Guide § 75.02[6] (1983). When a debtor receives a general discharge from the Bankruptcy Court, the official form states: "The above-named debtor is released from all *dischargeable* debts" (emphasis added).[3] 11 U.S.C.A., Bankruptcy Rules and Official Forms, at 396 (Aug. 1, 1983). Educational loans are not the only debts to which this principle applies. Other debts, such as taxes, alimony, support and maintenance, and nonscheduled debts are not affected by a general discharge even though there is no express order to that effect. See, e.g., *In re Williams,* 703 F.2d 1055 (8th Cir. 1983) (support and maintenance); *In re Safka,* 24 Bankr. 87 (D. Vt. 1982) (taxes); *In re Iannacone,* 21 Bankr. 153 (D. Mass. 1982) (nonscheduled debts).

---

[3] Bankruptcy Rule 4004(e) provides that "[a]n order of discharge shall conform to Official Form No. 27." Since 1898, the official discharge form has stated in one way or another that the debtor's discharge applies to all debts, "excepting such debts as are by law excepted from the operation of a discharge in bankruptcy." Countryman, The New Dischargeability Law, 45 Am. Bankr. L.J. 1, 2 (1971). Taylor's order of discharge stated "The above-named person is released from all dischargeable debts."

Whether a debt is listed on the bankrupt's schedule of debts is not determinative of the dischargeability of the debt. Bankruptcy Rule 1007(a) requires the debtor to submit a list of all creditors. See also 11 U.S.C. § 521(1) (Supp. 1981). The debtor simply lists all of his debts. He makes no judgments about which of them are nondischargeable, if any.

Similarly, the fact that a creditor does not appear on the order of payment of dividends does not imply that the debt has been discharged. Although the creditor of a nondischargeable debt may share in the distribution of the debtor's estate, *In re Donahue,* 16 Bankr. 335, 339 (D. Mass. 1982), his rights to the entire amount of the nondischargeable debt are unaffected if he chooses not to claim a dividend.

It is clear, therefore, that under existing law in the absence of special circumstances a student loan is assumed to be nondischarged. The Bankruptcy Court does not have the power to discharge a student loan unless one of the two conditions listed in § 523(a)(8) is present. There is no reason to expect the Bankruptcy Court to mention student loans in an order of discharge unless special circumstances apply.

Because student loans are not discharged automatically under § 523(a)(8), the creditor need not appear at the bankruptcy proceedings and file a complaint for nondischargeability. "The Code is self-executing and Congress has declared such debts not discharged." *In re Wright,* 7 Bankr. 197, 199-200 (N.D. Ala. 1980). See also S. Rep. No. 95-989, 95th Cong., 2d Sess. 79 (1978), reprinted in 1978 U.S. Code Cong. & Ad. News 5865 ("This provision [§ 523(a)(8)] is intended to be self-executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan"). Congressional intent could not be more clearly stated.

We describe in detail the result under §§ 523(a)(8) and 727 because we conclude that the later law is a beacon from which we can discern the course of congressional intent applicable to the wording of § 1087-3 which applies to the

bankruptcy petition in question. We think it is clear that Congress intended no substantive changes when it transferred the rule of nondischargeability of student loans from the Higher Education Act to the Bankruptcy Act. The similarity of the language in the two sections is obvious. The purpose of § 1087-3 was to ensure that "guaranteed student loans were excepted from the effect of a discharge in bankruptcy." *In re MacKay,* 7 Bankr. 703, 704 (D. Mass. 1980). The purpose of § 523(a)(8) was to "follow[ ] generally current law and excerpt [*sic*] from discharge student loans until such loans have been due and owing for five years." S. Rep. No. 95-989, *supra.*

Due to an accident of drafting, there was a gap of several months between the date of the repeal of 20 U.S.C. § 1087-3 (1976) and the effective date of 11 U.S.C. § 523(a)(8) (1976). Cases in which debtors sought to take advantage of this hiatus to have their student loans discharged have given rise to decisions emphasizing the identity of purpose of the two sections. See, e.g., *Wisconsin Higher Educ. Aids Bd.* v. *Lipke,* 630 F.2d 1225, 1226-1227 (7th Cir. 1980); *In re Adamo,* 619 F.2d 216 (2d Cir. 1980). In *MacKay, supra* at 706, the court said, "[T]he clear intent of Congress [was] to keep student loans nondischargeable." Even before § 523(a)(8) was enacted at least one commentator assumed that student loans were nondischargeable whether or not the creditor made a claim. "The educational debts are, of course, nondischargeable in the absence of any action by the creditor or debtor. Thus, at the beginning of the proceedings there is no reason for the creditor to file a complaint . . . seeking to have the debts declared nondischargeable." Ahart, Discharging Student Loans in Bankruptcy, 52 Am. Bankr. L.J. 201, 209 (1978).

As noted above, student loans are only one of several types of debts enumerated in § 523(a) which are automatically nondischargeable under the 1978 Bankruptcy Act. Nondischargeability was not an innovation of the 1978 Act however. It is clear that other types of debts were automatically nondischargeable even before the 1978 Act. In trac-

ing the development of dischargeability and explaining the effect of the Bankruptcy Rules of Procedure of 1973, the court in *In re Wright, supra* at 198, said, "But, note, as is well known, such debts as taxes, alimony, support and maintenance, non-scheduled debts, and some others were automatically not affected and survived the discharge without necessity of an express order." In *Erspan* v. *Badgett,* 647 F.2d 550, 552 (5th Cir. 1981), the court, applying § 17(a)(7) of the Bankruptcy Act, as appearing in 11 U.S.C. § 35(a) (1970), found that the bankrupt's support obligation to his former spouse was not discharged by his general discharge even though she had filed no claim in the bankruptcy proceeding and made no objection to his discharge. We think that the parallel provisions of §§ 1087-3 and 523(a)(8), as well as traditional rules and practice in bankruptcy matters, compel the conclusion that Congress intended student loans to be nondischargeable in the same way under both sections. Therefore, the fact that Baybank, the plaintiff's assignor, did not appear at the bankruptcy proceedings to make a claim does not affect the ultimate nondischargeability of those loans.

The defendant also argues that the Bankruptcy Court is the sole court with jurisdiction to determine questions of dischargeability. This is true only for types of debts which are not automatically nondischargeable. At one time, Bankruptcy Courts would not address the dischargeability of particular debts at all. The Bankruptcy Court would issue a general discharge and it would be for the State courts to determine whether a particular debt was dischargeable. *In re Wright, supra* at 197 & n.1. In 1973, when the Bankruptcy Rules of Procedure were adopted, the burden was shifted to the Bankruptcy Court to decide particular dischargeability matters. But the jurisdiction of the Bankruptcy Courts was not exclusive with respect to all types of debts. In the case of alimony, for instance, the court in *Erspan, supra* at 556, said that "with regard to those claims, the bankruptcy court possessed only concurrent jurisdiction with other courts." *Erspan* interpreted the 1970 Act. The

same is true under the 1978 Act. "While subsection 523(c) gives the bankruptcy court exclusive jurisdiction to determine the dischargeability of debts listed in subsections 523(a)(2), (4), and (6) when a creditor requests such a determination, it does not give the bankruptcy court exclusive jurisdiction over the debts listed in the other subsections of 523(a)." *In re Peterman,* 5 Bankr. 687, 690 (E.D. Pa. 1980). See also 3 L. P. King, Collier on Bankruptcy § 523.06[13] (15th ed. 1982) ("As to debts excepted from discharge other than those falling within the ambit of section 523[a] (2), (4), and (6) the bankruptcy court has original but not exclusive jurisdiction; its jurisdiction is concurrent with the appropriate local court"). Furthermore, when a State court is presented with a judgment of discharge from a Bankruptcy Court, "[t]he mere fact that a judgment has been rendered does not prevent the court from looking into the proceedings with a view of determining the nature of the liability which has been reduced to judgment." *Poolman* v. *Poolman,* 289 F.2d 332, 335 (8th Cir. 1961), quoting *Wetmore* v. *Markoe,* 196 U.S. 68, 72 (1904).

Given the clear statements in § 523(a)(8) and § 1087-3, the expressions of congressional intent, and the discussions in cases and commentary, we conclude that the general discharge in bankruptcy granted Taylor did not discharge him from his debt to the plaintiff. Faced with his failure to show undue hardship in the Bankruptcy Court, we assume that that court meant its judgment to comply with the law. There is no reason to assume otherwise.

The order of the Appellate Division is reversed and the judgment entered for the defendant is vacated. Judgment is to be entered for the plaintiff.

*So ordered.*