**In re Wilford Neal BOERGER & Harriet Erna Boerger, Debtors.**

**FIRST NATIONAL BANK IN BROOKINGS, SOUTH DAKOTA, Plaintiff,**

v.

**Wilford Neal BOERGER & Harriet Erna Boerger, Defendants.**

**Bankruptcy No. 85–02504–C.
Adv. No. 85–0665–C.**

United States Bankruptcy Court, W.D. Missouri, C.D.

Dec. 16, 1986.

R.L. Veit, Jefferson City, Mo., for plaintiff.

Norman W. Lampton, Columbia, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

This adversary complaint comes before the Court to be ruled on the pleadings and briefs submitted. Since there is no substantial factual dispute, the rather complicated background will be stated as briefly

as possible. Debtor purchased a Chrysler-Plymouth dealership in Brookings, South Dakota in July of 1972, and the debt involved here arose therefrom. In 1974 after liquidation of the dealership, debtor was sued by the First National Bank of Brookings for the balance.

The bank alleged fraud and in May of 1975 the bank obtained a judgment against Wilford Neal Boerger for $63,227.73. In 1976, Wilford Neal Boerger filed a petition for bankruptcy, case # 76–4148, in the United States District Court for the District of South Dakota. The bank filed its action to have said judgment declared not dischargeable under Section 17(a)(2) and/or 17(a)(4). On March 10, 1977, the bankruptcy judge, after hearing, determined that the debt was not dischargeable, that Wilford Neal Boerger had made fraudulent written and oral statements and representations and that plaintiff, Alvida Sorenson had paid $40,000.00 as a result of her guarantee on the deficiency so that the bank was actually awarded judgment for only $23,732.71 plus interest.

Debtor Wilford Neal Boerger meanwhile had been indicted and charged in Federal Court for violation of Title 18, United States Code, Section 1014, for the same activities. On or about August 13, 1976, he entered a guilty plea and was sentenced to five years but the sentence was deferred. It appears that a condition of the deferment and subsequent probation was that he pay restitution of $23,227.25 to the First National Bank and $40,000.00 to Alvida Sorenson.

On or about April 7, 1981, a petition to revoke probation was filed and on or about May 14, 1981 he was sentenced to the Federal Penitentiary in Leavenworth, Kansas. In June of 1981, he filed a motion for reduction of sentence. Although the record is somewhat unclear, the pleadings and the depositions indicate that the Federal District Judge ruled that if Wilford Neal Boerger would execute and deliver (to the two plaintiffs herein) promissory notes secured by second deeds of trust on the family residence *AND* if debtor Harriet Erna Boerger would execute the same notes and deeds of trust, the Judge would reduce the sentence.

Debtor Wilford Neal Boerger not finding his then present accomodations to his liking, agreed and signed. Debtor Harriet Erna Boerger, perhaps inspired by the story of Ruth, also signed thus converting the ancient words of the King James version to the truly modern translation:

"Whither thou goest, I will go; and Whatever thou owest, I will owe".

Unfortunately, matters did not progress well and although debtor Wilford Neal Boerger was released from prison, the debts were not paid and in early 1985, both debtors filed a petition for relief—Chapter 7—in the Western District of Missouri, seeking to discharge the debts to the bank and to Ms. Sorenson. The holder of the first deed of trust has heretofore foreclosed on the residence, so the two plaintiffs have no collateral and filed this action to declare their respective debts nondischargeable. After interrogatories, depositions, and motions, the last brief was filed October 20, 1986 and the case submitted to this Court.

Plaintiffs rely on the ruling in the Act proceeding by the South Dakota Judge and his findings. Debtors, on the other hand, insist that the debt they scheduled herein was a new debt, incurred in 1981, and that the plaintiffs acquiesced in accepting the new notes and additional collateral as satisfaction of the original (nondischargeable) debt. Debtors further contend that debtor Harriet Erna Boerger was never liable on the underlying debt and that her 1981 signature on the promissory notes did not incur nondischargeable liability simply because she promised to pay a nondischargeable debt.

Thus, the Court is left with the following questions:

1. Does the prior ruling in 1977 bind this Court?

2. Does the ruling of the Federal District Court in 1976 of guilt for fraud bind this Court?

3. Did the execution of new notes and deeds of trust constitute a new debt or novation changing the character of the obligation?

4. Did debtor's Harriet Erna Boerger's debt assumption of the previous nondischargeable debt create a nondischargeable obligation as to her?

Although it seems to the Court there is at least one other substantial issue, the parties have not raised it and this Court will only rule the issues raised by the pleadings and parties.

The Court determines the first question in the affirmative. Under the Bankruptcy Act and prior to November 1, 1979, the denial of a discharge by a Bankruptcy Referee or Bankruptcy Judge (unless appealed) was res judicata. *Pearlman v. 322 West 72nd Street Company, Inc.*, 127 F.2d 716 (2nd Cir.1942). Also see *In re Francis P. Payton*, 5 Bankr.Ct.Dec. 402 (1979) wherein the Court stated:

"... the law to be crystal clear that, where a discharge in bankruptcy has been denied, or a determination made that a particular debt is nondischargeable, that issue is res judicata, and a bankrupt has lost his right to have the matter readjudicated in a subsequent bankruptcy proceeding ..."

██ The same result is obtained under the present Bankruptcy Code. *In re Housler*, 41 B.R. 455 (DC W.D.Penn.1984) sets this out and not surprisingly quoted the *Payton* case above for the identical principle. The fact that debtor's original petition was under the Act while this proceeding is under the Code lends no support to any different treatment. Under the Act, Section 17(a)(2) exception from discharge read:

"... liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit, or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another".

That section was replaced by Section 523(a)(2) which excepts from discharge any debt for money, property, etc. to the extent obtained by:

"(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive ..."

From a perusal of the two sections, it is clear that no substantial change occurred in the wording and there is no reason to believe that the findings of fact and conclusions of law entered by the Bankruptcy Court in South Dakota under Section 17(a)(2) would be different under Section 523(a)(2). The Court, therefore, holds that the final judgment as to dischargeability made in 1977 under the Act is res judicata as to any attempt to discharge the same debt in 1986 under the Code.

██ The Court determines the second question in the negative. Although the Bankruptcy Court is an adjunct of the District Court, and its cases are only those referred to it by the District Court, and its decisions are subject to review by the District Court, the rulings of the District Court while not ruling in a "bankruptcy mode" are not binding on the lower body. The question of dischargeability is for the bankruptcy court *alone* to consider and determine. *Matter of Hunter*, 17 B.R. 523 (Bankr.W.D.Mo.1982) and *In re Vandrovec*, 61 B.R. 191 (Bankr.N.D.1986) as well as *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

True, the District Court may refrain from referring the case to the bankruptcy court and hear the matter itself; or it may withdraw the reference and hear the matter itself; or it may reverse the bankruptcy court on appeal. However, in each instance it is sitting as a Court of Bankruptcy, not as a District Court. The distinction may be ephemeral, but it is real. Therefore, the conviction of the debtor by the District Court in South Dakota adds nothing to a determination of dischargeability vel non in the instant adversary action.

■ The Court determines the third question in the negative. It almost goes without saying that a promise to pay money that is already owed on a noncontingent undisputed and liquidated debt is not a substituted performance or a substituted contract unless accepted by the obligee. *Restatement of the Law of Contracts 2d,* Subsection 278, 279. Where a new party becomes the obligor, then a novation occurs but only where there is the agreement and assent of the beneficiary of the new promise, *Restatement,* ibid subsection 280.

In this case the new promise of payment evidenced by the note and deed of trust executed by debtor wife was not bargained for, contracted for or assented to by the creditors. According to the evidence, these documents were required by the District Court as part of the quid pro quo for the reduction of sentence and all payments were made to the District Court. Nowhere is there any evidence that the creditors negotiated, assented or participated in any way in the actions that led to the execution of the note and deed of trust.

There is one other point that must be made. On November 12, 1986, the Supreme Court decided the case of *Kelly v. Robinson,* —— U.S. ——, 107 S.Ct. 336, 93 L.Ed.2d 188. It is therein ruled that restitution payments, ordered in criminal cases, are not dischargeable in bankruptcy. While the case dealt with state-ordered restitution, nothing therein indicated a different result in federal-ordered restitution. It would be contrary to the policies underlying both the criminal and bankruptcy processes to allow a criminal restitution order to subsume and thereby alter the character of a preexisting nondischargeable debt. For the obverse of this rule, see *U.S. v. Carson,* 669 F.2d 216 (5th Cir.1982) and *U.S. v. Alexander,* 743 F.2d 472 (7th Cir. 1984).

■ The Court determines the fourth question in the negative. There is no indication that debtor Harriet Erna Boerger participated in the fraud practiced on the creditors in the original transaction. She was not the subject of prosecution in the Federal District Court. Her only fault, if it be such, was to affix her signature to a note and deed of trust for the purpose of obtaining the release of her husband from prison. She was following the precepts of the popular song to "stand by your man" and this Court can see no reason, legally, ethically or morally, to penalize her any further than she has already been devestated by the loss of all her non-exempt worldly goods. Her voluntary agreement to retire someone else's nondischargeable debt transfers to her none of the social opprobrium that refuses a fresh start to certain debtors.

For the reasons stated above, the Court holds that the debts of the First National Bank in Brookings, South Dakota, and Alvida Sorenson as to debtor Wilford Neal Boerger are NOT DISCHARGED, but are DISCHARGED as to debtor Harriet Erna Boerger.

This opinion shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 7052 Rules of Bankruptcy.