In re Richard T. SALER, Debtor.

Harold B. SALER and Stephen B. Saler Trust, Plaintiffs,

v.

Richard T. SALER, Defendant.

Bankruptcy No. 96–15119F.
Adversary No. 96–1039F.

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 24, 1997.

David A. Koss, Wynnewood, PA, for debtor.

Michael L. Temin, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Presently before me in this adversary proceeding is the motion of plaintiffs Harold B. Saler and Stephen B. Saler Trust for summary judgment and/or judgment on the pleadings. The plaintiffs seek a determination that certain prepetition debts owed to them by the debtor are nondischargeable in this chapter 7 case. As will be discussed below, the defendant does not oppose the relief sought by the Trust plaintiff, but does oppose the relief sought by Harold Saler.

For the following reasons, upon consideration of the memoranda and oral arguments of counsel, I conclude that the motion should be granted as to both plaintiffs.

1. Judge Scholl probably acted in my absence since the 1988 bankruptcy case and adversary

### I.

The facts surrounding this 1996 adversary proceeding are not materially in dispute.

In 1988, Richard Saler filed a voluntary bankruptcy petition, docketed at Bankr. No. 88–13003F. On September 30, 1988, Harold Saler, on behalf of himself individually, and as trustee of the Stephen B. Saler Trust, commenced an adversary proceeding against the debtor. This complaint (Ex. A to the instant motion) alleged that Stephen and Richard Saler are the sons of Harold Saler. Stephen, however, died at some point prior to 1988, and a trust was established for the benefit of Stephen's children. Richard and Harold were both trustees of this trust. Among the assets of the trust were certain bearer and registered bonds located in a safe deposit box. Further, Harold Saler also held separate bearer and registered bonds which he kept in a different safe deposit box.

By conduct alleged to be fraudulent, willful and malicious, this 1988 bankruptcy complaint asserted that Richard Saler wrongfully converted certain bonds belonging to Harold Saler and to the Stephen B. Saler Trust, and improperly used the proceeds of some or all of those bonds for his sole benefit. The plaintiffs sought injunctive relief as to any bonds then still in Richard's possession or control, along with an accounting for those bonds which were sold or transferred. In addition, the plaintiffs in their 1988 action sought a determination that any claims then held by them against Richard were nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (a)(4) or (a)(6).

Richard apparently filed an answer in opposition to the complaint. However, on July 10, 1989, the parties submitted a settlement stipulation (Ex. B to the instant motion) which was approved by Bankruptcy Judge Scholl on July 17, 1989.[1] In material part, this stipulation provided that the aforementioned adversary proceeding would be dismissed without prejudice. Richard agreed that Harold could raise the same claims on or after September 1, 1989. Further:

proceeding were assigned to my docket.

[the] Debtor [Richard] hereby acknowledges and agrees that if, in any subsequent proceeding, Harold establishes any of the claims set forth in Counts I [fraud and conversion] and III [nondischargeability] of the Complaint any amounts or damages awarded as a result of those claims would constitute a non-dischargeable debt in the Bankruptcy Proceeding, pursuant to 11 U.S.C. § 523(a). As a result, any such amounts and damages are and are deemed to be a non-dischargeable debt pursuant to 11 U.S.C. § 523(a).

Motion, Ex. B (¶ 2).

After the approval of this stipulation, the 1988 bankruptcy case of Richard Saler continued. Harold Saler apparently filed a proof of claim in that case and the debtor filed an objection thereto. This objection was settled by a second agreement between the parties dated July 22, 1991 and approved by me on July 25, 1991. (Motion, Ex. C.) By the terms of this second agreement, the debtor withdrew his objection to Harold's proof of claim; the claim was to be

2. ... deemed allowed with the amount of the claim undetermined.

3. Harold B. Saler's claim is nondischargeable pursuant to the Stipulation ... [attached hereto]. That Stipulation of July 10, 1989, continues in full force and effect.

4. The allowed amount of the claim of Harold B. Saler will be determined in state court or federal court or other appropriate forum.

5. By this Stipulation, Debtor does not admit the truth of any of the allegations set forth in the Complaint.

Motion, Ex. C, at ¶¶ 2–5.

On September 30, 1991, Richard Saler received his bankruptcy discharge. Thereafter, his chapter 7 bankruptcy case was closed.

Earlier, on July 13, 1990, Richard pled guilty to theft of property from the Stephen B. Saler Trust. As part of his sentence, he was ordered to pay $174,000.00 in restitution to the Trust. (Complaint, Ex. A.) Also in

1990, Harold Saler brought suit in New York state court against his son Richard. (Complaint, Ex. B.) In this state court complaint, Harold alleged that Richard improperly took personal and registered bonds from Harold's safe deposit box. Among the relief sought were damages for wrongful conversion, as well as equitable relief along with punitive damages.

For reasons not explained, Richard did not file any answer to this state court complaint and a default was entered. Thereafter, the state court held a hearing to assess damages, at which time Richard did not appear. By order dated January 4, 1994, judgment by default was entered against Richard Saler in the amount of $570,332.30, plus punitive damages in the amount of $2,000,000.00. (Complaint, Ex. C.)

On June 4, 1996, Richard Saler filed the instant chapter 7 bankruptcy petition. On September 4, 1996, the above-captioned plaintiffs filed a complaint requesting a determination that the prepetition debts owed to them be held nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4) or (a)(6).[2] The debtor filed an answer asserting that his father, Harold Saler, authorized Richard's use of the proceeds of the bonds belonging to Harold and so Richard did not improperly convert them. The debtor avers:

[T]he Personal Bonds and the proceeds thereof which Debtor obtained from Harold Saler were obtained with the express permission and consent of Harold Saler and with full knowledge of the use of said Personal Bonds and proceeds thereof by Debtor Richard Saler.

Answer, ¶ 37. Thus, the debtor contends that his debt to his father is dischargeable in this 1996 bankruptcy case.

However, Richard does concede that he wrongfully converted bonds which were owned by the plaintiff Trust. Further, the "debtor does not seek a discharge of any debt due the Trust ... and ... is not seeking a discharge from the ordered restitution." Answer, ¶¶ 12–13. Therefore, the

---

2. The plaintiffs here do not challenge the debtor's right to obtain another bankruptcy discharge in this 1996 case. That is, they make no assertion that the provisions of 11 U.S.C. § 727(a)(8) apply.

"Debtor admits that the claim of the Trust in the amount of $174,000., less those amount already paid by Debtor in restitution, is non dischargeable." Answer, Count V, Wherefore Clause.

## II.

### A.

The plaintiffs here seek the entry of judgment on the pleadings in favor of the Stephen B. Saler Trust and the entry of summary judgment in favor of Harold B. Saler individually. The defendant/debtor does not oppose entry of judgment against him in favor of the Trust. He acknowledges that his restitution obligation is nondischargeable in this chapter 7 case. *See generally Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Accordingly, such judgment shall be entered.

However, the debtor opposes the entry of summary judgment in favor of plaintiff Harold Saler. He maintains that plaintiff Harold Saler has obtained only a prepetition judgment by default against him. Default judgments, the debtor argues, cannot serve as the basis for summary judgment in nondischargeability disputes. The debtor further argues that any agreements he entered into in his 1988 bankruptcy case are unenforceable in this 1996 case.

### B.

Federal Rule of Bankruptcy Procedure 7056 incorporates Fed.R.Civ.P. 56. In general, the standard for entry of summary judgment under Rule 56 is well established. As the Third Circuit Court of Appeals recently discussed:

> Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine dispute of material fact. *Gottshall v. Consolidated Rail Corp.*, 56 F.3d 530, 533 (3d Cir.1995) (citing Fed.R.Civ.P. 56(c)). In order to defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir.1995) (citing *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986)). In essence, the non-moving party must demonstrate a dispute over facts that might affect the outcome of the suit. *Id.* Moreover, in reviewing the record, we must give the non-moving party the benefit of all reasonable inferences. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993).

*Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 112 (3d Cir.1996).

As has been mentioned above, there is no dispute concerning that which occurred during the debtor's earlier bankruptcy filing, the substance of the debtor's two prior agreements with the plaintiff, or the entry of judgment against him in state court. Conversely, the parties do dispute whether Harold Saler authorized his son Richard to liquidate various bonds and use their proceeds for Richard's benefit.

Implicitly, the plaintiff contends that this factual dispute over the grant of authority is immaterial to this nondischargeability proceeding. Harold Saler argues that the debtor agreed in the 1988 bankruptcy case that any prepetition claim which Harold held was nondischargeable and the debtor is now bound by that agreement. The debtor counters with the two related arguments: first, that the entry of judgment by default in state court does not estop the debtor from challenging the nondischargeability of the plaintiff's claim; second, that any agreement regarding nondischargeability which was made in the 1988 bankruptcy case is unenforceable by virtue of section 524(c) of the Bankruptcy Code.

These issues will be addressed in turn.

### III.

█ The debtor is correct that, in this circuit, it has long been held that prepetition judgments entered by default do not determine, as a matter of issue preclusion (*i.e.*, collateral estoppel), the nondischargeability of a debt. The imposition of issue preclusion requires that the particular issue be actually contested. As a default judgment involves a lack of contest by the defendant, the judg-

ment itself cannot incorporate actually litigated factual determinations. Thus, collateral estoppel is inapplicable. *Matter of McMillan,* 579 F.2d 289 (3d Cir.1978); *accord, e.g., Matter of Ross,* 602 F.2d 604, 608 (3d Cir.1979); *In re Cobley,* 89 B.R. 446, 447–49 (Bankr.E.D.Pa.1988); *see In re Graham,* 973 F.2d 1089, 1099 (3d Cir.1992).[3]

■ Similarly, in general, the entry of a prepetition state court judgment does not render that judgment nondischargeable by virtue of claim preclusion (*i.e.,* res judicata). At the time of entry of the state court judgment, the issue of nondischargeability is not raised; moreover, such an issue may be within the exclusive jurisdiction of a bankruptcy court. Therefore, claim preclusion is not appropriate. *Accord, e.g., Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *In re Graham,* 973 F.2d at 1096; *In re Zois,* 201 B.R. 501 (Bankr.N.D.Ill.1996).

From these two legal precepts, the debtor maintains that summary judgment on the issue of nondischargeability in favor of Harold Saler, who has but a prepetition default judgment, is improper. The debtor contends that he is entitled in this adversary proceeding to present evidence in support of his assertion that his father authorized his use of the proceeds of Harold's bonds.

As the plaintiff suggests, however, the debtor's focus on the entry of the state court judgment by default overlooks his earlier bankruptcy filing. And it is the substance of the debtor's two settlements with his father in that earlier case which, the plaintiff believes, controls the present litigation.

The record is undisputed that Harold Saler was aware of and participated in the 1988 bankruptcy filing of the debtor. The complained-of actions of the debtor concerning Harold's bonds all occurred before that 1988 case commenced, and Harold Saler held a prepetition claim, albeit one that was not liquidated and one that may have been contingent. Unless Harold acted, his claim against Richard could have been discharged

in that 1988 bankruptcy case. *See generally In re Barley,* 130 B.R. 66 (Bankr.N.D.Ind. 1991).

■ By virtue of 11 U.S.C. § 523(c), all nondischargeability claims arising under sections 523(a)(2), (a)(4) and (a)(6) must be determined by a bankruptcy court. A bankruptcy court has exclusive jurisdiction over those claims. *See, e.g., Judd v. Wolfe,* 78 F.3d 110, 114 (3d Cir.1996); L. King, 4 *Collier on Bankruptcy,* ¶ 523.26, at 523–111 (15th ed. rev. 1996). Further, Fed. R.Bankr.P. 4007(c) sets a deadline for filing complaints to determine the nondischargeability of a debt under section 523(c).

Harold Saler acted to preserve his rights in that 1988 case by timely filing the abovementioned adversary proceeding seeking, *inter alia,* a determination of the nondischargeability of his claim under section 523(c). Had the parties not reached some accord, this prepetition debt would have been determined either dischargeable or nondischargeable after a trial on the merits. The parties, though, reached an agreement on this point, thereby eliminating the need for a trial.

■ While the terms of this agreement are plain enough, the plaintiff and defendant appear to disagree as to their meaning. For the following reasons, I agree with the plaintiff's construction, especially when the dischargeability settlement is read in conjunction with the later agreement resolving the debtor's objection to Harold Saler's proof of claim.

Obviously, the debtor does not now contend that Harold's claim was discharged in his 1988 bankruptcy case. If so, then Harold would have been enjoined, by virtue of section 524(a), from commencing the New York state litigation post-bankruptcy. *See generally Matter of Paeplow,* 972 F.2d 730 (7th Cir.1992). Richard could raise no such contention because the two settlement agreements are express in according Harold the right to bring such litigation.

---

**3.** To the extent the preclusive effect to be given a prepetition state court default judgment in a bankruptcy nondischargeability proceeding is governed by state law, *see In re Calvert,* 105 F.3d 315, (6th Cir.1997), New York state law apparently would treat a default judgment as having no collateral estoppel effect. *See, e.g., Pigliavento v. Tyler Equipment Corp.,* —— A.D.2d ——, 650 N.Y.S.2d 414, 415 (1996).

If Harold had the right to commence post-bankruptcy litigation to collect a prepetition debt, and if Richard now believes the outcome of that litigation does not represent a nondischargeable claim, then the debtor is implicitly arguing in this adversary proceeding the following: that the parties previously agreed to have both the fixing of the debt and issues surrounding its dischargeability determined in a non-bankruptcy forum after a trial on the merits, upon the conclusion of Richard's 1988 bankruptcy case. This interpretation of the earlier agreement suffers from two difficulties.

First, as mentioned earlier, Congress granted exclusive jurisdiction to bankruptcy courts to determine the dischargeability of Harold's claim, by virtue of section 523(c). Thus, it is problematic that parties could confer such adjudicative powers upon a non-bankruptcy court. They could agree only that a non-bankruptcy forum would determine the amount, if any, due to Harold from Richard.

Second, the language of the settlement is plain that the parties intended no such transfer of jurisdiction on the issue of nondischargeability. Instead, Richard agreed that *if* Harold held a prepetition claim, such a claim was nondischargeable. The debtor, though, did not concede that Harold held a valid claim. The first settlement agreed to postpone resolution of the amount of debt only; Richard's objection to the nondischargeability of the debt was being withdrawn. Any doubt on this point was resolved by the second agreement settling Richard's objection to the proof of claim.

By this second settlement, the parties decided to defer to a non-bankruptcy forum the determination of the amount of the debt, if any, owed to Harold by Richard. While the amount of this claim could have been resolved in proof of claim litigation during the bankruptcy case, this deferral was not unreasonable; the existence and amount of the claim would be determined by the application of relevant non-bankruptcy law. However, this second agreement deferring resolution of the amount of the claim expressly incorporated the earlier resolution of the nondischargeability complaint. Unless the debtor had

agreed to the nondischargeability of Harold's claim, the amount of which was to be determined later by a non-bankruptcy forum, this incorporation makes no sense.

■ Therefore, from the undisputed facts of record in this proceeding, I conclude that the defendant previously agreed that any state court ruling which held that he, Richard, owed funds to Harold, would yield a nondischargeable debt. There was no condition in that agreement which made the debtor's consent to the nondischargeability of such a debt dependent upon Richard's willingness to participate in the state court forum. Indeed, the imposition of such an condition would be counterintuitive.

Harold Saler asserted the position in the 1988 bankruptcy case that he held a nondischargeable claim. The sole purpose of such an assertion is to permit recovery on such a claim, without the debtor's consent, after the bankruptcy case has concluded. In this adversary proceeding, Richard suggests that, under the terms of the two settlements, Harold essentially agreed to execute only upon a non-default judgment. But such a settlement makes no sense, as Richard, simply by inaction, could render worthless Harold's claim.

Therefore, the only reasonable construction of these two settlements (along with their plain meaning) is that Richard conceded in his earlier bankruptcy case that Harold held a nondischargeable claim to the extent such claim was determined by any court of competent jurisdiction after the bankruptcy case was closed. Such a determination, albeit made by default, was reached by a New York state court of competent jurisdiction. Accordingly, the two agreements reached in the 1988 bankruptcy case render the 1994 state court judgment nondischargeable.

IV.

■ Perhaps recognizing the import of these earlier agreements to this adversary proceeding, the defendant's alternative argument is now his principal one. He maintains that his agreement with the plaintiff—that any postbankruptcy determination of Ha-

rold's claim would represent a nondischargeable debt—was invalid as violative of federal bankruptcy law. He contends that the failure of this agreement to meet the requirements of section 524(c)(2) and (c)(3),[4] which govern reaffirmation agreements, renders the earlier stipulations invalid.

In support of his position, the debtor refers to three decisions for consideration.

The first two, *Matter of Halpern*, 50 B.R. 260 (Bankr.N.D.Ga.1985), *aff'd*, 810 F.2d 1061 (11th Cir.1987), and *Matter of Ethridge*, 80 B.R. 581 (Bankr.M.D.Ga.1987) are inapposite for the same reason. In both of those decisions, the bankruptcy courts held that a state court consent order entered prior to the debtor's bankruptcy filing would not be dispositive on the issue of nondischargeability. As summarized in *Halpern*:

> Policy considerations dictate that dischargeability questions cannot be predetermined either by a state court or by agreement of the parties *prior to or in anticipation of the possible filing of a bankruptcy case.*

*Id.*, at 262 (emphasis added).[5]

By contrast, in this dispute, the debtor's agreement regarding nondischargeability arose in the context of dischargeability litigation in this bankruptcy court—the only court with jurisdiction to resolve the issue. The enforceability of a nondischargeability settlement reached in bankruptcy dischargeability litigation is quite different from the enforceability of such an agreement entered into by a defendant in a nonbankruptcy forum prior to the filing of any bankruptcy case.

More pertinent, but still materially different from this dispute, is *In re Minor*, 115 B.R. 690 (D.Colo.1990), the last decision referred to by the defendant.

In *In re Minor*, a creditor brought suit against a debtor prepetition, which lawsuit was stayed by the defendant's bankruptcy filing. The creditor then brought a nondischargeability complaint. In addition, the bankruptcy stay was terminated and the creditor proceeded with the earlier state court litigation. The state court litigation ended with a consent judgment in which the debtor, who was not represented by counsel, agreed that the judgment would not be discharged in his pending bankruptcy case.

The bankruptcy court later held that this nondischargeability agreement in the state court action was enforceable under 11 U.S.C. § 727(a)(10).[6] On appeal, the district court disagreed, concluding that section 727(a)(10) could only apply to an agreement by a debtor

---

4. These subsections state, in relevant part:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to an extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if—
>
> \* \* \* \* \* \*
>
> (2)(A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and
> (B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;
> (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that—
> (A) such agreement represents a fully informed and voluntary agreement by the debtor;
> (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
> (C) the attorney fully advised the debtor of the legal effect and consequences of—
> (i) an agreement of the kind specified in this subsection; and
> (ii) any default under such an agreement.

5. However, the terms of the consent judgment were sufficiently detailed as to justify the application of issue preclusion in favor of the creditor. *In re Halpern*, 810 F.2d at 1064.

6. This provision, which will be discussed below, states:

> (a) The court shall grant the debtor a discharge, unless—
>
> \* \* \* \* \* \*
>
> (10) the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter.

to deny discharge as to all of his debts, not as to a single debt. *Id.*, at 694. Further, the district court held that agreements concerning nondischargeability had to comply with the reaffirmation provisions of section 524(c), relying upon *In re Ethridge. Id.*, at 694–95.

One important difference between the *Minor* case and this dispute is the forum in which the accord concerning nondischargeability was reached.[7] In *Minor*, the debtor's settlement occurred in state court litigation; here, it occurred in bankruptcy court nondischargeability litigation. Moreover, the *Minor* decision recognized that "there is conflicting authority" which would have upheld the debtor's state court agreement. *Id*, at 694.

The "conflicting authority" referred to in *In re Minor* is the decision *In re Martinelli*, 96 B.R. 1011 (9th Cir. BAP 1988). In *In re Martinelli* the Ninth Circuit Bankruptcy Appellate Panel affirmed the denial of a debtor's motion to set aside a consent judgment entered in a nondischargeability action filed in bankruptcy court. The appellate court held that such a consent judgment, entered into by a debtor represented by counsel, did not need to comply with the reaffirmation provisions of section 524(c).

A similar conclusion was reached in *In re Laing*, 1993 WL 732230 (N.D.Okla.1993), *aff'd*, 31 F.3d 1050 (10th Cir.1994). The debtor in *Laing* had agreed in a chapter 11 case that a debt to a creditor was nondischargeable. That agreement was made a part of a confirmed chapter 11 plan, and the order of confirmation noted the nondischargeable nature of that debt. The debtor later filed another bankruptcy case and sought a determination that his previous consent to the nondischargeability of the claim was invalid. The district court denied that request and in so doing distinguished the decision of *In re Minor:*

The parties clearly agreed to the [confirmation] order knowingly and willingly. This court concurs with appellees' contention that the public policy denying preclusive effect to state court consent determinations of nondischargeability should not apply in a bankruptcy context, where a bankruptcy court has approved nondischargeability by agreement in approving a Chapter 11 Plan. While the court in *In re Minor*, 115 Bankr. 690, 693 (D.Colo.1990), found that a debtor, pre-bankruptcy, cannot contract away the right to discharge a debt pursuant to a settlement in a state court proceeding, that case can be distinguished from the case at bar. Here the bankruptcy court approved the settlement, with all creditors appearing, while a state court action would not necessarily involve all of them.

The public policy with regard to the provision of a "fresh start" for debtors following bankruptcy cannot be precluded by a state court judgment, but is inapplicable to an agreement consented to by all parties in the context of a bankruptcy. The behavior of the appellees during this bankruptcy action has been based on debtor's agreement in the prior bankruptcy action that the debt at issue "is not a dischargeable debt."

1993 WL 732230, at *4.

 Upon my review of the reported decisions on this issue, I am persuaded that the conclusions found in *In re Martinelli* and *In re Laing* apply to the instant adversary proceeding: a debtor may validly settle bankruptcy nondischargeability litigation without following the reaffirmation provisions of section 524(c), and such a settlement will be enforceable if approved by the bankruptcy court.[8]

 Clearly, the settlement of bankruptcy discharge litigation materially differs

---

7. The district court summarized its conclusions this way:

> Despite the parties' and the state court's well-intentioned effort to reduce the judicial resources spent to determine dischargeability, their actions took place *in the wrong forum* and without reference to the appropriate statute.

*Id.*, at 697 (emphasis added).

8. As court approval was obtained in this dispute, I need not now determine whether the settlement would be binding absent court approval.

from agreements reached in prebankruptcy state court litigation. In prebankruptcy litigation, the question of the dischargeability of the debt is not in issue. *See generally Brown v. Felsen.* It is obviously the central issue in bankruptcy dischargeability litigation. Moreover, Federal Rule of Bankruptcy Procedure 9011 will require (in most circumstances) that the creditor's allegations that the debt is nondischargeable be made in good faith. *See generally In re Duplante,* 204 B.R. 49 (Bankr.S.D.Cal.1996). If the creditor does not act in good faith, sanctions under Rule 9011 and, in some instances, under section 523(d) of the Bankruptcy Code, may be assessed. *See generally In re Harvey,* 172 B.R. 314, 319 (9th Cir. BAP 1994).

In addition, all creditors of the debtor can learn of this litigation by checking the case docket entries; the bankruptcy trustee can insure that other creditors are not adversely affected by the terms of the settlement. The debtor usually will have the benefit of bankruptcy counsel to help determine that the settlement is in the debtor's best interest. And the settlement will take place in the forum—the bankruptcy court—which may have exclusive jurisdiction over the nondischargeability determination.

While the effect of such a settlement may be similar to a reaffirmation agreement, it is not a reaffirmation agreement; and the public policy concerns implicit in section 524(c) are much less implicated. *See In re Martinelli,* 96 B.R. at 1014 (by settling dischargeability litigation, the debtor is conceding that the claim was not subject to discharge, thereby rendering section 524(c) inapplicable). *Compare In re Sheehan,* 153 B.R. 384 (Bankr.D.R.I.1993) (a postbankruptcy letter sent by the debtor to a creditor cannot, by itself, render a debt nondischargeable in light of the provisions of sections 524(c) and 727(a)(10)).[9]

Three additional considerations convince me that a debtor may enter into a binding settlement of nondischargeability litigation with court approval without complying with the reaffirmation provisions of section 524(c).

First, the debtor has the right to waive his discharge as to *all* debts, by virtue of section 727(a)(10), simply by executing a postbankruptcy written agreement which is approved by the bankruptcy court. The notice and rescission provisions of section 524(c) need not be a part of a waiver of a discharge under section 727(a)(10). In this dispute, the debtor reached a settlement of dischargeability litigation which could permit a debt to survive discharge. This agreement involved a writing executed by the debtor postpetition; further, court approval for this agreement was obtained.

The debtor offers no explanation why federal law should be construed to protect a debtor from his own actions and thus render unenforceable an agreement in favor of one creditor but which, in identical form, would be enforceable in favor of all creditors. Accordingly, at least one court has relied upon section 727(a)(10) to enforce a nondischargeability agreement in favor of one creditor which is approved by a bankruptcy court (even in the absence of nondischargeability litigation). *See In re Mapother,* 53 B.R. 433 (Bankr.W.D.Ky.1985).

 Second, the debtor's position fails to recognize that certain dischargeability issues fall within the concurrent jurisdiction of the state court. Assertions of nondischargeability which are not based upon sections 523(a)(2), (a)(4), (a)(6) or (a)(15) may be resolved by a nonbankruptcy forum. *See gen-

---

**9.** In *In re Grayson,* 199 B.R. 397, 401 (Bankr. W.D.Mo.1996), a bankruptcy court expressed concerns that consent judgments in nondischargeability litigation could be misused to the detriment of debtors. The court, however, stated that it would review such judgments to insure their fairness prior to approval. The court did not state that such judgments would be treated as reaffirmation agreements, subject to rescission by the debtor.

Indeed, the National Bankruptcy Review Commission, established as part of the Bankruptcy Reform Act of 1994, §§ 601, *et seq.,* Pub.L. No. 103–394, is considering whether to recommend to Congress that the present reaffirmation provisions of the Code be amended. Recent testimony before the Commission acknowledged that settlements of dischargeability litigation need not comply with the reaffirmation provisions of section 523(c). "Bankruptcy Review Commission Takes On Wide Range of Issues at January Meeting," *9 Bankruptcy Law Reporter* (BNA) No. 5, 124, at 139 (Jan. 30, 1997).

*erally In re Borbidge,* 81 B.R. 332, 334 (Bankr.E.D.Pa.1988); L. King, 4 *Collier on Bankruptcy,* ¶ 523.03 (15th ed. rev. 1996). Moreover, Fed.R.Bankr.P. 4007(b) places no deadline for the filing of any such complaints. *See, e.g., In re Lyman,* 166 B.R. 333, 336 (Bankr.S.D.Ill.1994); *Matter of Cain,* 96 B.R. 115 (Bankr.N.D.Ohio 1988); *In re Alton,* 64 B.R. 221, 223 (Bankr.M.D.Fla.1986), *aff'd,* 837 F.2d 457 (11th Cir.1988). Therefore, a creditor may raise a nondischargeability action in a state court of general jurisdiction at any time, even after the bankruptcy case is completely administered and closed. *See Deichert v. Deichert,* 402 Pa.Super. 415, 587 A.2d 319 (1991); *Buccino v. Buccino,* 397 Pa.Super. 241, 580 A.2d 13 (1990); *Massachusetts Higher Education Assistance Corp. v. Taylor,* 390 Mass. 755, 459 N.E.2d 807 (1984).

Assume such an action is brought in state court long after a bankruptcy case is closed. The logic of the debtor's position here is that such litigation could not be settled, even with state court approval, because any such settlement would be subject to the reaffirmation provisions of section 524(c). However, section 524(c)(1) requires that all reaffirmation agreements be entered into before the grant of a discharge. Therefore, in those instances involving dischargeability litigation postbankruptcy in state court or federal district court, since the bankruptcy discharge has already been entered, the debtor's position leads to the result that no valid settlement of such litigation is permissible.

The debtor suggests no reason, let alone a persuasive reason, why the bankruptcy statute should be construed to prohibit settlements of dischargeability litigation, when Congress clearly intended that such litigation could be brought after the bankruptcy case was closed. It is more persuasive to conclude that Congress did not intend for the provisions of section 524(c) to apply to dischargeability litigation.

Finally, to the extent one may consider the legislative history of section 524(c) to interpret congressional intent on this point, the evolution of the statute supports the conclusion that Congress did not intend to treat settlements of discharge litigation as reaffir-

mation agreements governed by section 524(c).

Both H.R. 8200 (1st Sess., 95th Cong.1977) and S. 2266 (2d Sess., 95th Cong.1978) contained the following reaffirmation provisions in their proposed sections 524:

... (b) After the commencement of a case under this title, a creditor may not enter into an agreement with the debtor the consideration for which in whole or in part is based upon a debt of the debtor that is dischargeable in a case under this title, whether or not discharge of such debt is waived. Any such agreement is void.

(c) Notwithstanding subsection (b) of this section ... an agreement of the kind specified in subsection (b) of this section that is entered into in good faith and that is approved by the court is enforceable only if such agreement is—

(1) *in settlement of litigation under section 523* of this title; or

(2) an agreement providing for redemption under section 722 of this title.

L. King, App. B, *Collier on Bankruptcy,* App.Pt. 4(d), at 4–929 (15th ed. rev. 1996); L. King, App. C, *Collier on Bankruptcy,* App. Pt. 4(e), at 4–1797 (15th ed. rev. 1996) (emphasis added).

Thus, both of these two early versions of bankruptcy legislation, which evolved into the present statutory scheme, prohibited reaffirmation agreements completely. However, a settlement of dischargeability litigation was expressly permitted (as were agreements concerning redemption of collateral).

When the Senate debated S. 2266 on September 7, 1978, an amendment was proposed to the reaffirmation provisions of section 524. This modification, which the Senate adopted, eliminated the proposed ban on all reaffirmation agreements found in section 524(b). The Senate was persuaded that reaffirmation agreements in some circumstances could be in the best interests of debtors, as well as creditors. Therefore, in the Senate's version of the legislation, the restrictive versions of sections 524(b) and (c) of original S. 2266 were replaced by the more liberal provisions of a new section 524(b), one which permitted written reaffirmation agreements, subject to

a thirty day right of rescission by the debtor. 124 Cong.Rec. S 14722–23 (daily ed., Sept. 7, 1978).

The House of Representatives thereafter approved an amendment to the Senate's amendment, creating a new version of sections 524(c) and (d) of H.R. 8200 which:

> represent[s] a compromise between the [original H.R. 8200] and the Senate amendment on the issue of reaffirmation of a debt discharged in bankruptcy. Every reaffirmation to be enforceable must be approved by the court, and any debtor may rescind a reaffirmation for 30 days.... If the debtor is an individual the court must advise the debtor of various effects of reaffirmation at the hearing. In addition, to any extent the debt is a [unsecured] consumer debt ... reaffirmation is permitted only if the court approves the reaffirmation agreement before granting a discharge ... as not imposing a hardship on the debtor ...; *alternatively, the court may approve an agreement entered into in good faith that is in settlement of litigation of a complaint to determine dischargeability*....

124 Cong.Rec. H11096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards) (emphasis added).

This explanation of the revised reaffirmation provisions of section 524 was repeated in the remarks of Senator DeConcini on October 6, 1978. 124 Cong.Rec. S 17413 (daily ed. Oct. 6, 1978).[10] And it was this version of section 524 which became law with the enactment of the Bankruptcy Reform Act of 1978 on November 6, 1978.[11]

The evolution of section 524(c) of the Code reflects congressional intent to permit reaffirmation agreements in circumstances wider than those which were originally proposed. However, at no time did Congress intend to prevent a debtor who was a party to dischargeability litigation from reaching a binding settlement of that litigation. Such settlements were intended to be enforceable, even in those versions of the statute which prohibited reaffirmation agreements.

Accordingly, for all of these reasons, I conclude that a settlement of nondischargeability litigation in bankruptcy court, which is approved by that court, is enforceable and binding without need for compliance with the reaffirmation provisions of section 524(c). As this defendant entered into such a settlement in his 1988 bankruptcy case, that agreement is binding upon him.

## V.

### A.

This conclusion renders summary judgment in favor of Harold Saler appropriate.

It has long been held that a determination of nondischargeability in one bankruptcy case bars a redetermination of that issue in a subsequent bankruptcy case. *Accord, e.g., Matter of Swate,* 99 F.3d 1282, 1288 (5th Cir.1996) ("Because the nature of Swate's obligations created by the Agreement Incident to Divorce and later merged into the Post Divorce Final Judgment was determined in the first bankruptcy proceeding, Swate is barred from relitigating the issue in the second bankruptcy proceeding"); *In re Webb,* 157 B.R. 614, 616 (Bankr.N.D.Ohio 1993) ("A determination of nondischargeability in one bankruptcy case has a res judicata effect on the same debt in a subsequent case"); *In re Crasper,* 142 B.R. 396, 397 (Bankr.D.Idaho 1992) ("We construe the law to be crystal clear that, where a discharge in bankruptcy has been denied or a determination made that a particular debt is nondischargeable, that issue is res judicata, and a bankrupt has lost his right to have that matter readjudicated in a subsequent bankruptcy proceeding") (quoting *In Re Payton,*

---

10. The remarks of Representative Edwards and Senator DeConcini, which were made just prior to the enactment of the Code, have been viewed as "persuasive evidence" of congressional intent due to the status of these elected officials as floor managers of the bankruptcy legislation. *Begier v. I.R.S.,* 496 U.S. 53, 64 n. 5, 110 S.Ct. 2258, 2266 n. 5, 110 L.Ed.2d 46 (1990).

11. Sections 524(c) and (d) were later amended in 1984 and 1994. But those amendments, one of which extended the rescission period from 30 to 60 days, are not germane to the issue raised in this dispute.

5 B.C.D. 402, 403 (Bankr.E.D.Pa.1979)); *In re Boerger*, 67 B.R. 922 (Bankr.W.D.Mo. 1986).

As I mentioned earlier, the binding effect of a determination of nondischargeability is equally true in those circumstances where a debtor consents to such a ruling. *Accord In re Laing*, 1993 WL 732230 (a court-approved agreement in an earlier chapter 11 case that a debt would not be discharged was binding in a subsequent chapter 7 filing). This follows from the binding nature of such court-approved agreements.

■ I am aware that there is one statutory exception to this general principle, and that exception is found in section 523(b) of the Code.[12] However, section 523(b) has no applicability in this proceeding. As explained by one court:

> The purpose of section 523(b) is to make dischargeable, debts that were not discharged in a prior case but would have been discharged, had the prior case been filed at a later time or had a creditor not been omitted from schedules.

*In re Cassidy*, 1995 WL 661244, *4 (Bankr. N.D.Ga.1995).

As applied to this adversary proceeding, if Richard's consent to the nondischargeability of Harold's claim in his earlier bankruptcy case had been based, for example, upon sections 523(a)(1) or (a)(8), then a subsequent bankruptcy filing might arguably render that settlement no longer binding, in that this claim would be dischargeable in the second bankruptcy case (assuming section 727(a)(8) would not bar a second discharge). *See In re Edson*, 86 B.R. 141 (Bankr.E.D.Wis.1988). However, in the earlier bankruptcy case, the nondischargeability claim of Harold Saler was based upon sections 523(a)(2), (a)(4) and (a)(6). These particular subsections are not referred to in section 523(b). Indeed, the specific language of section 523(b) gives support to the notion that nondischargeability

determinations in earlier bankruptcy cases should be *res judicata* in a subsequent bankruptcy filing, unless subsection 523(b) is applicable. *Accord In re Szafranski*, 147 B.R. 976, 988 (Bankr.N.D.Okla.1992).

In sum, section 523(b) does two things. First, by its express provisions, it permits the discharge of a certain formerly-nondischargeable debt where new circumstances render the obligation dischargeable in accordance with section 523(a). Second, by its negative implication, it forbids discharge of a debt whose nondischargeability was established in a prior case, on the basis of past acts which do not change. This satisfies general policies of finality and judicial economy according to the doctrine of res judicata as well as the special demands of bankruptcy equity.

Therefore, the exception found in section 523(b) is inapplicable to this adversary proceeding.

### B.

In his 1988 bankruptcy case, the debtor had the opportunity to litigate the amount and nondischargeability of his father's claim against him. While represented by bankruptcy counsel, he elected not to do so. Rather, he settled the dischargeability litigation and proof of claim litigation in a manner which deferred resolution of the amount of the claim to a postbankruptcy forum. The debtor further agreed that if he were found liable to his father, then such liability would arise from conduct which would render the debt nondischargeable.

Perhaps the debtor hoped that his father would not press the issue after the 1988 bankruptcy was concluded. Perhaps the debtor felt that his ability to prevail would be enhanced in a nonbankruptcy forum. Whatever his reasons, in return for this delay, the debtor agreed that if any judgment were entered against him in favor of Harold Saler,

---

12. Section 523(b) states:
 (b) Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under

section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

the fixing of this prepetition claim would not be affected by the discharge entered in connection with his 1988 case. Given the terms of this agreement, its approval by the bankruptcy court and the grounds for assertion of nondischargeability, the debtor has no right to undo his earlier accord by filing a second bankruptcy case.

Accordingly, summary judgment shall be entered in plaintiff's Harold Saler's favor (as well as judgment on the pleadings in favor of plaintiff Stephen B. Saler Trust).